669 P.2d 204

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Steven ATWOOD, Defendant-Appellant.**

No. 13897.

Court of Appeals of Idaho.

Sept. 6, 1983.

Larry C. Ashcraft of Ashcraft & Jordan, Elmore County Public Defender, Mountain Home, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Stephen J. Gledhill, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Steven Atwood was charged with second degree murder for having stabbed and killed Dennis Tull during a barroom fight. Atwood freely admitted the stabbing, but he claimed self-defense. At trial he was convicted of involuntary manslaughter. He appeals from the judgment of conviction, contending that the court committed prejudicial error in giving the jury an instruction on the lesser included offense of involuntary manslaughter. Atwood argues there was no evidence in the record to support that charge. However, we affirm the judgment of conviction.

The evidence at trial revealed the following facts. On the evening of May 28, 1980, Atwood had spent several hours drinking and talking with friends in the Loading Zone Tavern in Mountain Home. Around midnight, Atwood went to the restroom. Shortly afterward Dennis Tull and James Gould followed him there. Just as Atwood was emerging from a stall at the rear of the room, Tull approached him. A discussion ensued which rapidly escalated into an argument. Besides Tull, Gould and Atwood, two other men, Frank Cooley and Russ Young, were also present at the beginning of the altercation. Tull, who had been drinking all evening, was apparently upset with Atwood and blamed him for the loss of Tull's job as manager of an adult book store in Mountain Home.

Both Cooley and Young testified that Tull began the fight when he started pushing Atwood. At this point, however, Cooley left the restroom, and Young, who was At-

wood's friend, was pushed out by Gould, who wanted to make sure that the fight remained "one on one." Gould testified that after the fight began he heard a body crash against the partition of the toilet stall. However, he could not see the combat because the partition blocked his vision. When the fight was over, he saw Atwood run out the door of the restroom and found Tull's body lying on the floor. Tull had suffered a stab wound to the side and was bleeding profusely. He died later in the night from internal bleeding caused by a punctured aorta.

Atwood testified that he had acted in self-defense. He recounted that during the argument Tull threatened him, telling him that he was "gonna put me under the ground." Atwood said that Tull pushed him and then punched him in the mouth, toppling him backward onto the toilet. Tull then descended upon him and began choking him and beating his head against the wall. He tried to push Tull away, but could not budge him because Tull weighed at least 230 pounds. At this point, he began to fear for his life and reached for his weapon, a "survival knife" with a seven-inch blade. He said he did not intend to kill Tull, but that use of the knife "was the only thing [he] could think of to get [Tull's] hands off of [him]." After stabbing Tull once in the side, Atwood rushed out of the restroom and left the bar through the rear door. He hid the knife in the alley behind the bar and ran directly to the police station. He told the police of the stabbing and revealed the hiding place of the knife.

At the close of the trial, both sides submitted proposed jury instructions. The court gave most of Atwood's requested instructions concerning self-defense. Atwood did not object to the giving of these instructions, nor to the instructions defining second degree murder and voluntary manslaughter. As to those he asserts no error on appeal.

The judge instructed the jury on the elements of second degree murder and the

included offense of voluntary manslaughter. He explained that even though a killing is intentional it may amount only to voluntary manslaughter if the killing is done without malice. He informed the jury that malice could be absent if the killing occurred "upon a sudden quarrel or heat of passion." The court instructed, to prove voluntary manslaughter, the state must show that the killing was unlawful and "was done with the intent to kill." The judge gave the following instruction on involuntary manslaughter which is defined in I.C. § 18–4006.[1]

Involuntary manslaughter is the unlawful killing of a human being without malice in the operation of any firearm or deadly weapon in a reckless or negligent manner which produces death.

In order to prove the commission of the crime of involuntary manslaughter, each of the following elements must be proved beyond a reasonable doubt.

1. That a human being was killed, and

2. That the killing was unlawful.

A killing is unlawful within the meaning of this instruction if it occurred in the operation of any firearm or deadly weapon in a reckless, or careless or negligent manner which produces death.

The judge supplemented this instruction with another instruction explaining that the death had to be the result of a "reckless" or "grossly negligent" act; that ordinary negligence was not sufficient.

Atwood's attorney had objected at trial to the giving of any instruction on involuntary manslaughter. He had contended that there was nothing in the record to support such an instruction because the evidence showed that Atwood—in self-defense—had acted deliberately and intentionally, not recklessly or negligently, in stabbing Tull. Counsel argued that the giving of this instruction would confuse the jury and might lead them to reach a compromise verdict unsupported by any evidence simply because a death had occurred. The court overruled the objection, holding that the

---

1. Section 18–4006 of the Idaho Code was amended in 1983. The statute in effect when Tull's death occurred may be found in 1972 Idaho Sess. Laws, ch. 336, § 1, pp. 928–29.

318

instruction was supported by a reasonable view of the evidence. The jury returned a verdict of guilty to involuntary manslaughter.

The issue before us is whether the court erred in giving the instruction on involuntary manslaughter. Idaho Code § 19–2132(b) states: "The court shall instruct the jury on lesser included offenses when they are supported by any reasonable view of the evidence." In *State v. Lopez*, 100 Idaho 99, 102, 593 P.2d 1003, 1006 (1979), our Supreme Court stated: "It is clear that I.C. § 19–2132(b) makes it the duty of the trial court to instruct the jury on lesser included offenses when they are supported by a reasonable view of the evidence, even if the court is not requested to do so." The same duty exists even if a defendant, for tactical reasons, expressly requests that no instruction on a lesser included offense be given. However, as the court in *Lopez* said: "[A]ny failure by the trial court to meet this mandatory duty which is caused by defendant's express objection to or waiver of the trial court instructing as to lesser included offenses will be as in the instant case invited error and not considered on appeal." *Id.* citing *People v. Ray*, 14 Cal.3d 20, 120 Cal.Rptr. 377, 533 P.2d 1017 (1975); *People v. Sedeno*, 10 Cal.3d 703, 112 Cal.Rptr. 1, 518 P.2d 913 (1974); *People v. Mosher*, 1 Cal.3d 379, 82 Cal.Rptr. 379, 461 P.2d 659 (1969); *State v. Weyer*, 210 Kan. 721, 504 P.2d 178 (1972). But *compare People v. Wickersham*, 32 Cal.3d 307, 185 Cal.Rptr. 436, 650 P.2d 311 (1982) (failure of the trial judge to obtain an express waiver from the defendant before removing a lesser included offense from the jury's consideration, held reversible error.)

However, as noted, the duty to instruct on a lesser included offense is subject to a limitation. Where a reasonable view of the evidence would not support a finding that the defendant is guilty of a lesser included offense, the trial court is not required to give an instruction on the lesser offense, despite the defendant's request that it do so. *State v. Seiber*, 97 Idaho 140,

540 P.2d 802 (1975); *State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973); *State v. Clokey*, 83 Idaho 322, 364 P.2d 159 (1961).

Atwood takes these rules one step further. He has cited cases from other jurisdictions holding that it is prejudicial error for the trial court to allow the jury to convict a defendant of a lesser included offense where there is no evidence to support all of the elements of the lesser offense. We believe this rule should prevail in Idaho today in spite of some rather broad statements to the contrary in the earlier Idaho cases of *State v. Ellis*, 70 Idaho 417, 219 P.2d 953 (1950) and *State v. Morrison*, 52 Idaho 99, 104, 11 P.2d 619, 621 (1932). The more recent case of *State v. Padilla*, 101 Idaho 713, 716, 620 P.2d 286, 289 (1980) now suggests that only when "a defendant may have committed all of the elements of a lesser crime" can he be convicted of that crime.

In Idaho the elements of the crime of murder in the second degree are: (a) an unlawful killing, (b) the intent to kill, and (c) malice. The elements of voluntary manslaughter are: (a) an unlawful killing, with (b) the intent to kill, but without malice. The elements of involuntary manslaughter are: (a) an unlawful killing, without malice and without an intent to kill. Here the jury was instructed that a killing is unlawful if it occurred in the operation of a "deadly weapon in a reckless, or careless or negligent manner which produces death."

The information filed against Atwood charged that, with malice, he intentionally stabbed Tull with a knife, inflicting a wound from which Tull died. In our view the specific acts charged against Atwood included the essential elements of involuntary manslaughter. *See Padilla, supra.* Moreover, because all of the elements needed to sustain a conviction of the crime of involuntary manslaughter are included within the elements needed to sustain a conviction of second degree murder, we hold that the tests of an included offense, as set forth in *State v. McCormick*, 100 Idaho 111, 594 P.2d 149 (1979), are met.

Parenthetically, we note that the involuntary manslaughter instruction given by the trial judge does not include the language from I.C. § 18–4006, which provides that involuntary manslaughter may occur "in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. . . ." Apparently the court and both counsel concluded that those provisions of the statute were not applicable. The issue raised in this appeal does not require us to examine that conclusion. We note only that other courts have held where a defendant in good faith attempts to exercise his right of self-defense (a lawful act), but does so with excessive force (an unlawful manner), and kills without the intent to kill, he can be found guilty of *involuntary* manslaughter. *See People v. Welch,* 187 Cal. Rptr. 511, 137 Cal.App.3d 834 (1982); *State v. Warren,* 5 Kan.App.2d 754, 624 P.2d 476 (1981). *Compare People v. Flannel,* 25 Cal.3d 668, 160 Cal.Rptr. 84, 603 P.2d 1 (1979) and *People v. Germany,* 116 Cal.Rptr. 841, 42 Cal.App.3d 414 (1974) (both holding that an honest but unreasonably held belief that killing was necessary in self-defense negates malice and reduces crime to *voluntary* manslaughter).

As noted above, the basic distinction between voluntary and involuntary manslaughter is that voluntary manslaughter requires an intent to kill whereas involuntary manslaughter does not. *See State v. Padilla,* 101 Idaho 713, 723, 620 P.2d 286, 296 (1980) (Bistline, J., dissenting). In this respect our homicide statutes are similar to California's. *See People v. Welch, supra,* and *People v. Germany, supra.*

The evidence introduced at trial established that Atwood intentionally stabbed Tull. Atwood, the only eye witness to the slaying, testified that he deliberately stabbed Tull in self-defense out of fear for his own life. However, it does not necessarily follow, as a matter of law, that because Atwood intentionally used a deadly weapon he must have intended to kill Tull.

Whether he had that intent was a question of fact for the jury to determine. *State v. Warden,* 100 Idaho 21, 592 P.2d 836 (1979). Depending upon the weight and credibility ascribed to the evidence—including the testimony of Atwood himself—the jury could have found either the presence or the absence of the intent to kill. *State v. Anstine,* 91 Idaho 169, 418 P.2d 210 (1966).

It is obvious from the jury's verdict that they were unable to find, beyond a reasonable doubt, the existence of malice and intent to kill. From the evidence the jury may have found that Atwood deliberately stabbed Tull with the subjective, but unreasonable, belief that such action was necessary in self-defense. If the jury concluded that the action taken by Atwood was unreasonable, when viewed objectively, then the killing was unlawful, although done without the specific intent to kill. The force employed exceeded what the law permitted Atwood to use, according to the court's instructions on the right of self-defense. Thus the elements of involuntary manslaughter could have been established.

It was also possible, under the evidence, for the jury to have concluded that the intentional act of stabbing was done without an intent to kill, not in self-defense, but with a reckless disregard for human life. In this way the elements of involuntary manslaughter also could have been established.

We conclude that the trial court did not err by instructing the jury on both voluntary and involuntary manslaughter. Thus, we affirm.

WALTERS, C.J., and BURNETT, J., concur.