792 P.2d 916

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Edward Neil SMITH,
Defendant–Appellant.**

**No. 17550.**

Supreme Court of Idaho.

March 6, 1990.

Rehearing Denied June 20, 1990.

Killen, Pittenger & Kerrick, McCall, for defendant-appellant. William M. Killen argued.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

JOHNSON, Justice.

This is a criminal case. It involves convictions and sentences for first degree murder, robbery and third degree arson. The issues presented and our answers to them are:

1. Was the issue of denial of the right to counsel in a detainer hearing in Arizona preserved for review by this Court? Yes.

2. Did denial of appointed counsel in the Arizona detainer hearing deprive Idaho of jurisdiction to try the defendant? No.

3. Did the trial court abuse its discretion in admitting evidence of another shooting in Arizona? No.

4. Did the prosecutor's comments during closing argument, to which there was no objection, constitute fundamental error? No.

5. Were the sentences imposed illegal or excessive? No.

We affirm the convictions and the sentences.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

On April 7, 1986, Edward Neil Smith (Smith) and his twin brother Donald robbed the residents of a home in Spokane, Washington at gunpoint, stealing a .22 caliber revolver, a shotgun and a 1980 Cadillac (the Cadillac). Mark Patterson left his home in Mountain Home on the evening of April 7th to drive to Lewiston, Idaho in his pickup truck. A mail truck driver observed Patterson's pickup parked behind the Cadillac on Highway 55 in Valley County, Idaho, early on the morning of April 8th. On the morning of April 8, 1986, on Highway 55 in Valley County, Patterson was found dead in the front seat of the Cadillac, which was partially burned. Upon investigation following the discovery of Patterson's body, the fingerprints of the Smith brothers were found on the Cadillac. During an autopsy, .22 and .38 caliber bullets were recovered from Patterson's body. Patterson's pickup was later found abandoned in Las Vegas, Nevada. Edward Smith's fingerprints were found on the pickup.

On April 9, 1986, the Smith brothers rode a bus from Las Vegas, Nevada to Yuma, Arizona. At the Yuma bus station, the brothers had a shoot-out with a Yuma police officer. The officer and Donald were killed. Both .22 and .38 caliber bullets were recovered from the officer's body. Fragments of bullets were also recovered from the ground where the shooting occurred. A flight bag containing clothing was discovered near where Smith had been standing at the bus station. Both the flight bag and the clothing had belonged to Patterson. Four .38 caliber shell casings were found a short distance from the bus station.

Ballistics tests revealed that both the .22 caliber bullets recovered from the body of the officer in Yuma and those recovered from Patterson's body were fired from the .22 caliber revolver stolen by the Smith brothers in Spokane. The tests also showed that the .38 caliber bullet recovered from Patterson's brain, the .38 caliber bullets recovered from the body of the officer in Yuma and a portion of a .38 caliber bullet found on the ground at the bus station were all fired from the same gun. Examination of the firing pin impressions showed that the .38 caliber casing found by the side of the road where Patterson's body was discovered in Idaho came from the same gun as the .38 caliber casings found near the bus station in Yuma. Also, the tests proved that a .22 caliber casing found in Patterson's pickup came from the .22 revolver stolen by the Smith brothers in Spokane.

A witness (Stevens) to the shooting of the officer in Yuma testified that the officer began to frisk Smith before the shooting started. Stevens said that Smith and the officer struggled and that she heard "taps" that sounded like a firecracker coming from the direction where Donald was. Stevens saw Smith standing over the fallen officer firing a gun at him four or five times and stated that Smith then fled from the station. Another witness (Paez) to the shooting of the officer saw two men shooting at the officer, but she could not identify Smith as one of the men.

Smith was convicted in Arizona of the murder of the officer. Pursuant to I.C. § 19–5001, the Interstate Agreement on Detainers (the Agreement), the prosecuting attorney of Valley County, Idaho requested that Smith be transferred to Idaho to be prosecuted for first degree murder, robbery and third degree arson. At the time of the hearing in Arizona concerning his transfer, Smith requested that counsel be appointed for him. This request was denied. Following a hearing in Arizona, Smith was transferred to Idaho for prosecution.

894

When he appeared before the magistrate in Idaho for arraignment, Smith moved to dismiss the pending charges or to be re-transported to Arizona for further proceedings consistent with the Agreement. The primary ground for the motion was that Smith had been denied the right to counsel in the proceeding for his transfer to Idaho from Arizona. Smith also contended that only the first degree murder charge was pending when the transfer proceeding took place in Arizona, although the Valley County prosecutor represented that he had charged Smith with robbery and third degree arson also. The magistrate denied Smith's motion. Following a preliminary hearing, Smith was bound over for trial before the district judge.

Smith did not renew his motion to dismiss or to be re-transported to Arizona after he was brought before the district judge. He did file a motion in limine in the trial court seeking to exclude from his trial evidence of the robbery in Spokane and the shooting in Yuma. The trial court denied this motion. At trial the state introduced, and the trial court admitted, evidence of the robbery in Spokane and the shooting in Yuma.

During closing argument, without objection from Smith's attorney, the prosecutor told the jury:

There are no witnesses who will come in who survived to tell you exactly how they did it and in what sequence. Mark can't. But the evidence shows that you can for him. And you are the only ones who can for him. And based on the evidence, which is what we base our decision on and not speculation.

If Mark were here and could somehow show us the way, in addition to the way clearly shown now by the evidence, he would do the same. And he would walk to this defendant here and he would say, "it's you. It's you and it's Donald. Why did you do this to me?"

The jury found Smith guilty of first degree murder, robbery, and third degree arson. After considering whether it should impose the death penalty for the first degree murder conviction, the trial court sentenced Smith to fixed term life sentences without the possibility of parole on the first degree murder and robbery convictions and for a fixed term three year sentence on the third degree arson conviction. The trial court ordered that the life sentence for robbery run consecutively to the life sentence for first degree murder and that the three-year sentence for third degree arson would run consecutively to the sentence for robbery.

Smith filed a motion under I.C.R. 35 claiming that Smith should be entitled to some credit for "good time" and that the sentences were excessive. The trial court denied the motion but clarified the sentence to provide: "This sentence is not intended to abrogate or deny the defendant's right, if any, to earn good time credits."

Smith then appealed his convictions and sentences.

II.

THE DENIAL OF THE MOTION TO DISMISS OR FOR RE-TRANSFER WAS PRESERVED FOR APPEAL.

Smith asserts that he is entitled to have this Court review the denial of his motion to dismiss or for re-transfer to Arizona. We agree.

Under the circumstances of this case, the magistrate had jurisdiction to consider Smith's motion to dismiss or for re-transfer. Under the Agreement when a request for transfer is made by the "appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending," the appropriate authorities in another state that is party to the agreement shall make the prisoner available for prosecution in the requesting state, if "the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request." I.C. § 19–5001(d)(1) (1987). The magistrate to whom the motion to dismiss or for re-transfer was presented was the judge who certified that the facts recited in the request were correct and who recorded and transmitted the request. This was appropriate,

since at the time the request was made there was a complaint pending before the magistrate charging Smith with first degree murder. When Smith arrived in Idaho and was arraigned by the magistrate, the jurisdiction of the magistrate was limited to that provided in I.C. § 1–2208 and I.C.R. 2.2. Under this statute and this rule, the only aspects of felony cases that are usually assignable to a magistrate are the first appearance, the setting of bail and the preliminary hearing. I.C. § 1–2208(3)(d) (1979); I.C.R. 2.2(b)(2) (1987). However, the "trial and related hearing ... of felony proceedings" may be assigned to attorney magistrates when approved by the administrative district judge of the district and when approved by order of this Court upon application of the administrative district judge. I.C.R. 2.2(c) (1987).

I.C.R. 2.2(d) provides:

Any irregularity in the method or scope of assignment of a criminal proceeding or action to any magistrate ... and all objections to the propriety of an assignment to a magistrate are waived unless a written objection is filed not later than 7 days after a notice setting the action for ... hearing on a contested motion and before any contested matter has been submitted to the judge for decision.

Not only did the state not object to the consideration of Smith's motion by the magistrate, but the state fully briefed and argued the issues presented by the motion. Whether or not the necessary procedures for the assignment of the magistrate to consider the motion were fulfilled, the state waived any objection it had to the magistrate's decision. I.C. § 1–2214. *Cf. Parsons v. State*, 113 Idaho 421, 424–25, 745 P.2d 300, 303–04 (Ct.App.1987) (*review denied*).

■ Since the magistrate was, in effect and without objection, acting as a district judge in deciding Smith's motion, the decision on the motion is part of this appeal. I.C.R. 54.1 provides that where an attorney magistrate is assigned to hear any felony action, the judgment is appealable directly to this Court. While the magistrate here did not conduct the trial and render a judg-

ment, to the extent of the ruling on the motion to dismiss or for re-transfer, the decision of the magistrate should be considered in the same manner. The motion was, in effect, one "based on defects in the prior proceedings in the prosecution." I.C.R. 12(b)(1) (1987). The appeal from the final judgment includes an appeal from an interlocutory order such as this. I.A.R. 17(e)(1)(A) (1987).

## III.

## THE DENIAL OF APPOINTED COUNSEL IN THE ARIZONA DETAINER HEARING DID NOT DEPRIVE IDAHO OF THE JURISDICTION TO TRY SMITH.

■ Smith asserts that because his right to appointed counsel in the Arizona detainer hearing was violated, Idaho did not have jurisdiction to try him. We disagree.

There is an abundance of authority that even if Smith's rights were violated in Arizona, Idaho had the jurisdiction to try him, once he was before our courts. In *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), the Supreme Court reaffirmed the holding of *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886) that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'" 342 U.S. at 522, 72 S.Ct. at 511, 96 L.Ed. at 545. Smith acknowledges the applicability of the *Ker–Frisbie* doctrine but asks us to "disaffirm" it. Not only do we not have any power to disaffirm decisions of the United States Supreme Court, but this Court has consistently followed the rule that "[w]here the accused is personally before the court, the jurisdiction of the court to try him is not impaired by the manner in which he is brought before the court." *State v. Poynter*, 70 Idaho 438, 443, 220 P.2d 386, 390 (1950) (citing *In re Moyer*, 12 Idaho 250, 85 P. 897 (1906), *aff'd sub nom. Moyer v. Nichols*, 203 U.S. 221, 27 S.Ct. 121, 51 L.Ed. 160 (1906)).

## IV.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING THE EVIDENCE OF THE SHOOTING IN YUMA.

■ Smith asserts that the trial court should not have admitted certain portions of the evidence concerning the shooting of the officer in Yuma. We hold that under the circumstances of this case the trial court did not abuse its discretion in admitting this evidence.

Smith contends that the trial court went too far in allowing the witness Stevens to testify to all of Smith's actions in shooting the officer at the bus station in Yuma and in allowing the witness Paez to describe the shooting. Specifically, Smith objects to the portion of the testimony of Stevens that Smith stood over the officer and shot him and the testimony of Paez that two men were shooting at the officer when he was falling down. Stevens testified that she saw Smith holding the gun in both hands and heard him shoot the officer four or five times. Paez was unable to identify Smith as one of the men who was shooting at the officer.

We conclude that without this testimony of Stevens the state would not have been able to show that Smith fired the shots into the officer. This fact is what linked Smith with the bullets found in Patterson's body and with the shell casings found at the scene of Patterson's death in Idaho.

Our rules of evidence provide:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

I.R.E. 404(b) (1987).

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

I.R.E. 403 (1987).

The decision whether to admit evidence of other crimes or bad acts requires a balancing and "is a matter for the exercise of the sound discretion of the trial court." *State v. Stuart*, 110 Idaho 163, 170, 715 P.2d 833, 840 (1985) (*affirmed on rehearing*). In ruling on Smith's motion in limine to prevent the admission of evidence concerning the shooting in Yuma, the trial court said:

> Under the State's theory there were three eye-witnesses to the Valley County crimes: Mark Patterson, Don Smith, and Edward Smith. Mark Patterson and Don Smith no longer are able to testify. Edward Smith cannot be compelled to testify. Necessarily the State's case against Edward Smith must be based on circumstantial evidence. The evidence of the incidents in Arlington, Spokane, and Yuma all tie Edward Smith to the commission of murder, robbery, and arson in Valley County. Without evidence of these events, the only tie between Edward Smith and Mark Patterson are Mr. Smith's fingerprints on the Cadillac and the pick-up. While the prints are substantial items of evidence, they are capable of being explained away. Without the Arlington, Spokane, and Yuma evidence, the case against Mr. Smith is weak. With the evidence it is strong.
>
> Unquestionably evidence of other crimes, especially evidence of another homicide, is highly prejudicial in a murder prosecution. In this case, however, the highly probative nature of the evidence, and its necessity to the State's case, far outweighs the prejudicial effect. Under proper safeguards and limiting instructions it would not be unfair to use the evidence against Mr. Smith.

Although evidence was admitted at the trial as to all three of the incidents referred by the trial court in its decision on the motion in limine, Smith now complains only about the testimony of Stevens depicting Smith's standing over the officer at the bus station in Yuma and shooting him and the

testimony of Paez that two men were shooting at the officer as he was falling down. Smith cites the statements of the prosecutor in closing argument as indicating that the purpose of this evidence was to arouse and inflame the jury that Smith was a "cop killer:"

> And when [Stevens] next looked, there is Edward Smith standing over [the officer], straddling one of his legs when [the officer] is down, two hands on the gun shooting him again and again and again. "No, you look here." And he showed him the way to his death for doing his job.

Smith's attorney made no objection to this argument at the time and has not asserted the argument as a grounds for reversal here. He asserts only that this argument drove home the point that Smith had killed in Arizona and that the Idaho jury should convict him for that reason.

The trial court instructed the jury both at the beginning of the trial and immediately before the introduction of the evidence based on I.R.E. 404(b):

> The evidence introduced by the State suggesting that the defendant committed crimes other than that for which he is on trial may not be received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes.

> The evidence may be received and be considered by you only for the limited purpose of determining if it tends to show, first, the identity of the person who committed the crime or crimes of which the defendant is accused in this case; second, the existence of the intent which is a necessary element of the crimes charged in this case; third, a motive for the commission of the crimes charged in this case; fourth, possession by the defendant of means useful or necessary for the commission of the crimes charged in this case.

> For the limited purpose for which you may consider this evidence, you must weigh it in the same manner as you do all the other evidence in the case. You are not permitted to hear the evidence for any other purpose.

Smith does not challenge the propriety of the instruction, only that the trial court allowed Stevens and Paez to testify beyond what was necessary to establish that Smith was in possession of the .38 caliber gun in Yuma that fired some of the shots that were fatal to Patterson in Idaho.

Under the circumstances of this case, we conclude that the trial court did not abuse its discretion in allowing the testimony of Stevens and Paez concerning the shooting of the officer in Yuma. Without showing that the gun held by Smith was fired into the officer's body, the state could not link the .38 caliber bullets in the officer's body with the .38 caliber bullet in Patterson's brain. The testimony of Stevens and Paez was relevant circumstantial evidence tending to prove that Smith was present at the scene of the Patterson shooting in Idaho and that he may have used the gun to shoot Patterson. The trial court balanced the relevancy of the testimony against the prejudice to Smith and concluded that the probity and necessity of the evidence outweighed the prejudice. The trial court demonstrated that it understood the balancing required by I.R.E. 404(b) and 403 and applied the standards required by those rules in exercising its discretion to admit the testimony of Stevens and Paez.

## V.

### THE PROSECUTOR'S COMMENTS DURING CLOSING ARGUMENT DID NOT CONSTITUTE FUNDAMENTAL ERROR.

Smith asserts that in his closing argument the prosecutor interjected matters "clearly inadmissible and equally clearly calculated to arouse in the jurors the sort of passion and prejudice wholly inconsistent with a fair trial." He also asserts that even though no objection was made at trial to these comments, this Court may review this alleged error, because the comments constituted fundamental error. We disagree that the comments of the prosecutor were fundamental error.

Smith objects to the portion of the prosecutor's argument in which the prosecutor said:

If Mark were here and could somehow show us the way, in addition to the way clearly shown now by the evidence, he would do the same [*i.e.*, tell you exactly how they did it and in what sequence]. And he would walk to this defendant here and he would say, "It's you. It's you and Donald. Why did you do this to me?"

Smith contends that by these comments the prosecutor "portrayed to the jurors an alleged accusation and indictment of the defendant by the victim—an eyewitness accusation, wholly outside the evidence before them, of the most damning sort."

Since Smith did not object to these comments at trial, we will review the propriety of the comments only if they constituted fundamental error. In *State v. Missamore*, 114 Idaho 879, 882, 761 P.2d 1231, 1234 (Ct.App.1988) (*review denied*), our Court of Appeals considered whether remarks of a prosecutor in final argument, to which no objection was made, constituted fundamental error:

> In a criminal case we temper the failure to timely preserve an issue by the doctrine of fundamental error. When this standard is applied to prosecutorial argument, the error is fundamental only if "the comments ... [were] so egregious or inflammatory that any prejudice arising therefrom could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded." *State v. Ames*, 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct.App.1985).

Here, we conclude that the comments made by the prosecutor in closing argument to which Smith now objects were not so egregious or inflammatory that any prejudice arising from them could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded. If Smith's attorney had objected to these comments, the trial court could have cured any prejudice by simply telling the jury that they were not to consider that Mark Patterson had spoken to them, but that the comments were only arguments of the prosecutor.

## VI.

## THE SENTENCES WERE NOT ILLEGAL OR EXCESSIVE.

Smith asserts that the sentences imposed upon him by the trial court were illegal and excessive. We disagree.

Smith contends that he is entitled to "good time" credits against his life sentences and that the judgment of the trial court precluding the possibility of parole eliminated his receiving good time credits. He requests that we remand the case to the trial court and require the trial court to conform the judgment to I.C. § 20–101A, which refers to good conduct reduction of sentences. However, in ruling on Smith's motion for correction of his sentence under I.C.R. 35, the trial court said:

> [C]redit for good time is a concept that is distinct from parole. In any event it was not my intention to deny Mr. Smith the right to earn good time. Good time is controlled by statute, and whatever the statute provides should be followed. I express no opinion on whether he is entitled to earn good time credits as a matter of law under I.C. § 20–101A.

The trial court ordered that the judgment be clarified by adding the statement: "This sentence is not intended to abrogate or deny the defendant's right, if any, to earn good time credits." Without expressing any opinion on whether Smith is entitled to earn good time credits, we reject his assertion here on this issue, since the trial court has already clarified the judgment.

Smith also asserts that his sentences were excessive. He contends that a fixed life sentence for the first degree murder is not necessary to achieve the primary objective of protecting society and any or all of the related goals of deterrence, rehabilitation or retribution. He points to the psychological report considered at sentencing indicating that his behavior was affected by substance abuse or chemical dependency and by the dominance of his brother Donald over him. He says that these influences should be discounted now, since his brother is dead and because of the feasibility of rehabilitation with respect to

chemical dependency and abuse. He would have us reduce this fixed life sentence to an indeterminate life sentence.

Smith also argues that even if the fixed life sentence for murder was justifiable, a second consecutive fixed life sentence for robbery is inappropriate and should be reduced to an indeterminate life sentence.

In ruling on Smith's motion for reduction of his sentence under I.C.R. 35, the trial court said:

> The overriding sentencing consideration in this case was and continues to be the protection of society. Prior to the Valley County crimes the defendant had been convicted in Texas of burglary and misdemeanor assault. He had an outstanding warrant in Texas for attempted murder and robbery. The evidence at trial showed that he and his brother committed an armed robbery in Spokane shortly before the Valley County crimes. He has outstanding warrants for other robberies in the Spokane area. Within forty-eight hours of the Valley County crime, Mr. Smith and his brother murdered a police officer in Yuma, Arizona. The defendant has been convicted and sentenced for the Arizona murder.
>
> Despite the evaluation conducted by [the psychologist], I am satisfied beyond all possibility of doubt that society can be protected only by keeping Mr. Smith in prison for the rest of his life. That is the reason that I imposed consecutive, fixed life sentences.

The trial court demonstrated that in fashioning the sentences it considered all the circumstances concerning the crimes committed by Smith, his background and characteristics and the content of the psychologist's report. Considering the circumstances of this case and this defendant, we conclude that the trial court did not abuse its discretion in imposing these sentences.

## VII.

## CONCLUSION.

We affirm the convictions and the sentences.

BAKES, C.J., and BISTLINE, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, specially concurring.

I write separately to emphasize the conflict between the needs of the State to offer evidence of the incident in Arizona and the needs of the Defendant (and the trial judge) to confine the testimony and evidence to the crimes for which the Defendant was charged in Idaho. The State improperly expanded the testimony of the witnesses to the Arizona murder, and unjustly emphasized and dramatized the Arizona murder for the jury during closing argument. The Defendant was on trial for crimes committed in Idaho, not Arizona.

As the majority opinion emphasizes, the State believed it was important for the prosecution to have the Arizona witnesses testify at the Idaho trial. Unlike the Arizona murder, the Idaho murder was not observed by any living bystander, so the Defendant's guilt had to be proved by circumstantial evidence. The Arizona witnesses could supply the link between the Defendant and the gun used in the Idaho crime. That link could have been established just by asking the Arizona witnesses two questions: Did you observe the Defendant with a gun in his hand; and if so did you see him shoot it? With the answers to these two questions, the State could then proffer evidence to the jury of the similarities in the bullet slugs found at the Arizona and Idaho crime scenes to buttress the proposition that the Defendant was the perpetrator of the Idaho murder.

The answers to these two questions were all that the State could properly elicit from the witnesses, without raising concern that the jury would become biased against the Defendant by hearing evidence proving his guilt, for a crime the commission of which was not charged against him in the information (*i.e.*, the Arizona murder). Instead, it seems that the State went out of its way to foster prejudice against the defendant— as the excerpt in the majority opinion from the State's closing argument makes painfully clear. In minute and dramatic detail, the State re-enacted the Arizona murder

for the benefit of a live jury. The prosecution's closing argument in this case reminds one of the prosecution's conduct in *State v. Griffiths,* 101 Idaho 163, 610 P.2d 522 (1980). But unlike the prosecutor in *Griffiths,* who presented "to the jury a vivid portrayal of the homicide, based on invented 'facts' nowhere supported by the evidence,"[1] the prosecutor in *Smith* had the far superior advantage of relying on the expansive testimony of the Arizona witnesses to the Arizona crime, testifying "live" in an Idaho courtroom. And, unlike Griffiths, Smith was convicted of a crime for which there was tangible incriminating evidence. These distinguishing features, however, do not excuse the unnecessary overkill in *State v. Smith,* all of which was well illustrated to us by the defendant's attorney.

Prosecuting attorneys, as officers of the Court, know better. As the late Justice Shepard has stated, while prosecutors may strike hard blows, they are not at liberty to strike foul blows. Although the trial judge performed his function well in charging the jury to forget what the State had just told it, in graphic detail, about the Arizona crime, practitioners and judges alike know that this is often not enough. Although the State appears to have overstepped its bounds, the trial judge may have assuaged what was otherwise an intolerable episode. A final reminder is the following passage from a United States Supreme Court opinion, in which that Court reviewed a conviction unsupported by the charges included in the information filed against the Defendants:

> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.... It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would

be to convict him upon a charge that was never made.

*Cole v. State of Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948) (citations omitted). Officers of the Court should be prepared, and are indeed obligated, to heed the words of *Cole* and our state and federal constitutions.

BISTLINE, Justice, dissenting On Denial of Defendant–Appellant's Petition For Rehearing.

Counsel representing the defendant has submitted a sound analysis explaining why this Court should grant a rehearing, or at the least, in the interest of keeping Idaho case law reasonably unjumbled consider modifying the Court's opinion in some particulars—especially in the area of fair trial rights being infringed upon by admission of evidence of uncharged crimes. Citing *McCormick on Evidence* 451–53 (2d ed. 1972), he reminds us:

> [T]here is danger that if judges, trial and appellate, content themselves with merely determining whether the particular evidence of other crimes does or does not fit one of the approved classes, they may lose sight of the underlying policy of protecting the accused against unfair prejudice. The policy may evaporate through the interstices of the classification.
>
> [T]he problem is one of balancing, on the one side, the actual need for the other-crimes evidence in light of the issues and the other evidence available to the prosecution, ....

Brief of Appellant, 3. The "necessity" of tying the Arizona shells to the Idaho murder of Patterson, and this Court's conclusion that without that evidence the State could not link the .38 calibre bullets in the Arizona officer's body with the .38 calibre bullet in Patterson's brain, is criticized:

> [T]hat linkage was overwhelmingly demonstrated by the firearms testimony of the state's expert. He thoroughly demonstrated that (1) the .38 calibre bullets recovered from both bodies were fired from the same weapon, and (2) the .38 calibre shell casings recovered at the Ari-

---

1. *Griffiths,* 101 Idaho at 169, 610 P.2d at 528

(Bistline, J., dissenting).

zona scene along Smith's flight path bore the identical firing pin characteristics as that recovered from the murder scene, and further (3) both were most likely fired from a .38 handgun of the make and model obtained by Donald Smith in Texas shortly prior to the events in issue. Brief of Appellant, 4. Other portions of the brief are equally persuasive. Hence it is dismaying that there is no thought that the opinion for the Court might indeed be overbroadly stated in regard to the admission of other-crimes evidence.

Counsel concludes with a paragraph with which I would not have thought any member of the Court would so readily or summarily disagree:

It is submitted, once again, that the State of Idaho crossed over the line in its eagerness to convict. The Valley County jury was provided with testimony and argument of the most damning sort in a murder trial. They were told expressly and repeatedly that Smith was a cop killer; they were provided graphic and gruesome details of that death; the message was clear and compelling no matter how cautionary the trial court might otherwise instruct. As Imwinkelreid put it: '... juries aware of other misconduct employ an entirely different calculus of probabilities to determine guilt or innocence,' and are readily 'imbued with the commonly held ... notion, once a crook, always a crook.' *Ibid.* at p. 1487–88.

Unless this Court concludes beyond a reasonable doubt that such testimony did not *contribute* to the jury's verdict, a new trial is in order.

Brief of Appellant, 9 (emphasis in original). As one member of the Court, I have always thought that we do not sit to pass moral judgment upon a defendant, but rather to examine closely the application of the law to the specific and particular facts.