894 P.2d 144

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jeffrey Louis CARSNER, Sr.,
Defendant–Appellant.**

No. 20970.

Court of Appeals of Idaho.

March 9, 1995.

Petition for Review Denied May 23, 1995.

Rolf M. Kehne, Boise, argued for appellant.

Alan G. Lance, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent. Michael A. Henderson, argued.

PERRY, Judge.

In this case we are asked to review a number of rulings by the district court in a criminal trial. After reviewing the record and the alleged errors, we affirm the judgment of conviction.

## FACTS AND PROCEDURE

On June 3, 1992, Lorraine McKee died from a single gunshot wound to the head. From a neighbor's apartment, Jeffrey Carsner, McKee's live-in boyfriend, called 911 and stated that his girlfriend had just shot herself. When the police arrived, they found Carsner still in the neighbor's apartment. Carsner again told the police that McKee had shot herself. An investigation of the scene showed that after McKee had died, her body had been moved by someone. Other evidence suggested a struggle had occurred before the shooting. The gun used in the shooting was not initially recovered, but was found in the bedding underneath McKee once her body was removed.

Carsner was charged with second degree murder. He pled not guilty. Carsner maintained at trial that he was not in the room at the time of the shooting and that McKee had committed suicide. To explain the movement of the body and the further evidence suggesting a struggle, the defense theorized that someone, probably other neighbors, had entered the house after the shooting in search of marijuana and valuables.

The prosecution's theory was that Carsner had intentionally killed McKee. To support this, expert testimony was offered on high-speed blood splatters found on Carsner's clothing. These splatters indicated that Carsner was in close proximity to McKee when the gun was fired. The prosecution also produced evidence of motive, offering a note written by McKee to Carsner instructing him to move out of the apartment. There was an outstanding felony arrest warrant for Carsner in Oregon and McKee's note indicated that if Carsner did not move out as she instructed, leaving his young son and their cars behind, McKee would contact the authorities.

The jury was given instructions on second degree murder and the lesser included offense of manslaughter. The jury was further instructed on adequate provocation. Carsner was found guilty of second degree murder. Carsner appeals his conviction, claiming that Idaho's standard jury instructions on murder and manslaughter are incomprehensible and should be rewritten in modern, understandable language. Carsner also claims that a number of other errors resulted in an unfair trial, including: (1) improper jury instructions; (2) improper response by the district court to a written question from the jury; (3) improper impeachment of a defense witness; and (4) improper comments by the prosecutor during closing argument. Finally, Carsner claims that all the errors together amounted to cumulative error.

## ANALYSIS

### A. JURY INSTRUCTIONS

#### 1. Murder/Manslaughter Instructions

■ Carsner asserts that Idaho's standard jury instructions regarding murder and manslaughter are incomprehensible and unnecessarily confusing. He urges this Court to hold that the instructions are improper and should be rewritten in modern, understandable language. Specifically, Carsner chal-

lenges such phrases as "abandoned and malignant heart," "malice, express or implied," and "malice is negated by sudden quarrel or heat of passion," as used in Instruction Nos. 8, 9, 15, 16, 17 and 18. At trial, counsel for Carsner below did not object to the wording of these instructions. Normally the failure to object below precludes consideration of an alleged error on appeal. The Idaho Supreme Court has stated, however, in interpreting revisions to I.C.R. 30, that "the failure to object to an instruction at trial in a criminal case does not constitute a waiver of any objection to the instruction on appeal." *State v. Smith,* 117 Idaho 225, 229, 786 P.2d 1127, 1131 (1990). Thus, we may consider Carsner's challenge to the jury instruction language.

The language that Carsner objects to is drawn from the Idaho statutes defining murder, malice and manslaughter. I.C. §§ 18-4001, -4002 and -4006. In a challenge to similar instructions as those given in this case, the Idaho Supreme Court has stated:

An instruction to the jury that essentially follows the words of a statute normally is not error. "Ordinarily, the language employed by the legislature in defining a crime is deemed to be best suited for that purpose, and error cannot be predicated upon its use in informations and instructions."

*State v. Aragon,* 107 Idaho 358, 362, 690 P.2d 293, 297 (1984) *quoting State v. Brooks,* 49 Idaho 404, 409, 288 P. 894, 896 (1930).

█ This case falls squarely within the principle set forth in *Aragon* and *Brooks.* If the legislature chooses to amend the language of the statutes defining murder and manslaughter, then the instructions given to juries in this state should parallel those changes. Until such time, however, we are bound by the words that the legislature has chosen for the definition of various crimes. Accordingly, we reject Carsner's argument that his conviction should be overturned because of the language in the challenged instructions.

### 2. Instruction on Silence as Evidence of Guilt

Carsner asserts that Instruction No. 13 improperly allowed the jury to consider Carsner's silence as evidence of his guilt. Instruction No. 13 read:

Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind.

Carsner claims that this instruction violates his right to remain silent as guaranteed by the Fifth Amendment of the United States Constitution and Article I, Section 13 of the Idaho State Constitution.

█ The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman,* 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App. 1993).

█ The court and prosecution cannot comment on the accused's decision not to testify at trial as an inference of guilt. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The question here, however, is whether Instruction No. 13 invited the jury to make such an inference. The jury was also instructed, by Instruction No. 6, that:

It is a constitutional right of a defendant in [a] criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way.

Because we read the instructions as a whole, Instruction No. 6 would be sufficient to negate any improper inference that may

result from Instruction No. 13. Reading these instructions together, we believe the jury would understand that they could not consider the failure to testify at trial, but might consider statements not made and facts omitted from Carsner's conversations with the police. Therefore, the instructions given to the jury did not infringe upon Carsner's right not to testify at trial.

■ Carsner also argues, however, that the instruction permitted the jury to consider his silence as to certain facts in his statements to the police. In support of this argument, Carsner cites *State v. Sundstrom,* 77 Idaho 72, 286 P.2d 640 (1955), a case which held it error to instruct the jury that "the accused's evasions, denials, contradictions and falsities may be considered as links in the chain of circumstantial evidence showing his guilt." *Id.* at 74, 286 P.2d 640. The Court in *Sundstrom,* however, did not overturn the conviction because the instruction improperly allowed consideration of the defendant's silence, but because the Supreme Court felt the trial judge had invaded the province of the jury. The Court found that the passage:

> singles out the accused, appellant, and in effect instructs the jury that the accused factually committed evasions, denials, contradictions and falsities, and that the same may be considered by the jury as links in the chain of circumstantial evidence showing his guilt. It is within the province of the jury, and not the court, to find whether the accused, appellant, was guilty of any such conduct, and if so, whether the same constitutes a circumstance showing his guilt. The trial court should not have assumed as a fact in the instruction either, that appellant had been guilty of any such conduct, or, that such conduct constitutes a circumstance showing his guilt.

*Id.*

We do not believe that the language of Instruction No. 13 invades the province of the jury by implying the existence of evasions and falsities. In this case, the jury was also instructed:

The applicability of some of these instructions will depend upon the conclusions you reach as to what the facts are. As to any such instructions, the fact that it has been given must not be taken as indicating an opinion of the Court that the instruction will be necessary or as to what the facts are. If an instruction applies only to a state of facts which you find does not exist, you will disregard the instruction.

The jury was further instructed by the district court:

> I have not intended by anything I have said or done or by any questions that I may have asked to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness who may have testified, and if anything that I have done or said has seemed to so indicate, you will disregard that intimation and form your own opinion without regard thereto.

These additional instructions adequately addressed in this case the concerns that caused reversal in *Sundstrom.*

While the preferred practice would be to not give any such instruction,[1] we cannot say that it amounted to error in this case.

### 3. Instruction Stating Required Union of Act and Intent

■ Next, Carsner claims that the district court erred in failing to instruct the jury that, as provided under I.C. § 18–114:

> In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence.

Even if an instruction is a correct statement of the law, it need not be given if it is adequately covered by other instructions. *State v. Aragon,* 107 Idaho 358, 363, 690 P.2d 293, 298 (1984); *State v. Van Vlack,* 57 Idaho 316, 65 P.2d 736 (1937). In this case, the district court, though not using the specific language of I.C. § 18–114, instructed the jury on the levels of intent required to convict Carsner of second degree murder and voluntary or involuntary manslaughter.

---

1. The Idaho Criminal Jury Instructions Committee, appointed by the Idaho Supreme Court to develop pattern criminal jury instructions for Idaho, has recommended that instructions similar to Instruction No. 13 in this case not be given. *See* ICJI 309 (1995).

These instructions, particularly Instruction Nos. 10, 11, and 17, dealt specifically with the intent required before a finding of guilt could be reached. These instructions adequately covered the substance of I.C. § 18–114 and it was not error to fail to further instruct the jury regarding this issue.

### 4. Answering the Jury's Question

■ During deliberations, the jury sent a note to the district court asking:

Can you define for us "adequate provocation"? Can a non-physical threat be an "adequate provocation"? We are having difficulty interpreting Inst. 16 and 24.

The district court read the note to counsel and sought comments on how the note should be answered. Both attorneys concurred that no further instruction was warranted, with counsel for Carsner stating:

Your Honor, we would object to any further or additional instructions. I think the definitions are contained within the instructions already given to the jury.

The district court then explained that it had drafted a response as follows:

You have been fully instructed to the extent the term "adequate provocation" has been interpreted by statute or case law. Please again review the instructions, including those you have identified as troublesome.

Both attorneys agreed the response was appropriate and it was given to the jury in the form of a note. Carsner now contends, however, that the district court should have further instructed the jury that a non-physical threat may be adequate provocation.

As stated above, Carsner correctly notes that a jury instruction in a criminal case need not be objected to in order to be challenged on appeal. *State v. Smith*, 117 Idaho 225, 229, 786 P.2d 1127, 1131 (1990). From the exchange in the trial court, however, it appears that not only did Carsner fail to object to the court's answer to the question, but affirmatively requested that the court *not* answer the question. In the context of man-

datory lesser-included offense instructions, the Idaho Supreme Court has said that an objection to a jury instruction an appellant later claims should have been given is invited error and therefore the issue will not be considered on appeal. *State v. Lopez*, 100 Idaho 99, 102, 593 P.2d 1003, 1006 (1979). This rule is explained and affirmed in *State v. Tribe*, 123 Idaho 721, 852 P.2d 87 (1993) and *State v. Atwood*, 105 Idaho 315, 669 P.2d 204 (Ct.App.1983).

Most applicable to this case, however, is *State v. Wilkerson*, 121 Idaho 345, 824 P.2d 920 (Ct.App.1992), where a defendant argued below that an instruction was proper and in line with appellate authority. This Court stated:

[I]t appears that Wilkerson is now taking a position contrary to the one taken at trial. During the discussion of the proposed jury instructions, before they were finalized by the magistrate, Wilkerson's counsel stated—in support of her argument for excluding instruction seventeen—that, "instruction sixteen is quite clear ... and also is in accordance with the [appellate] decision." We believe that this affirmation of correctness goes well beyond a mere failure to object to the instruction. As a consequence, we decline to say that Wilkerson can invoke the *Smith* decision to enable her to argue contrary to the position she affirmatively presented to the trial court. If any error existed in instruction sixteen, as Wilkerson now contends, she invited the error, and we will not consider it on appeal.

*Id.* at 349, 824 P.2d 920.

■ The more narrow ruling in *Wilkerson* applies to this case and excepts it from the general rule in *Smith*. Carsner should not now be allowed to argue against what he affirmatively asked for at the trial level.[2] Any potential harm in the answer to the jury is deemed invited error, and therefore, we will not consider the district court's failure to provide a substantive answer.

---

**2.** Carsner further argues that because the district court had already drafted an answer to the question prior to taking comments from counsel, any objection would have been useless. We do not

agree. We will not speculate as to what changes in the answer may have been made had Carsner objected.

## B. IMPEACHMENT OF DEFENSE WITNESS BROWN

Carsner next claims that the prosecution improperly impeached defense witness Patty Brown. Brown testified that her roommate, Chris Hendry, was a drug addict who told Brown that he had been at the scene of the shooting before the police arrived. The prosecution impeached the credibility of Brown with the testimony of two police officers, detectives Miller and Anderson. Carsner argues that this impeachment testimony by the detectives was irrelevant because Miller's contact with Brown occurred more than ten years earlier, and Anderson could not have formed a reliable opinion as to Brown's credibility in the brief time he spent with her.

We begin by noting that we review questions of relevancy de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993). The purported relevance of the challenged testimony relates to the credibility of Brown, whose testimony, if believed, would have supported the defense theory that someone besides Carsner had altered the scene of the shooting. Idaho Rule of Evidence 608(a) explains how credibility may be attacked by opinion or reputation evidence:

> (a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness....

Our inquiry in this case, therefore, is not whether the testimony tended to affirm or impeach Brown's credibility. Rather, we must determine whether the detectives' opinions were based upon sufficient contact with the witness to enable them to render such opinions. If not, their opinions as to Brown's credibility would be irrelevant and not admissible.

Though not previously addressed by the Idaho appellate courts, the federal courts, in interpreting Federal Rule of Evidence 608, have distinguished between the foundational requirements for a personal opinion as to truthfulness and a witness' reputation in a community for truthfulness. In *United States v. Watson*, 669 F.2d 1374 (11th Cir. 1982), the Eleventh Circuit Court of Appeals noted that "the reputation witness must be qualified through a showing of 'such acquaintance with the [person under attack], the community in which he has lived and the circles in which he has moved, as to speak with the authority of the terms in which generally he is regarded.'" 669 F.2d at 1382 *quoting Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). The court went on to note that, "in contrast, opinion testimony is a personal assessment of character. The opinion witness is not relating community feelings, the testimony is solely the impeachment witness' own impression of an individual's character for truthfulness. Hence, a foundation of long acquaintance is not required for opinion testimony." *Id.* at 1382. *See also United States v. Nedza*, 880 F.2d 896 (7th Cir.1989).

First, with respect to detective Anderson, we conclude that his personal opinion as to Brown's credibility was relevant. At trial, counsel for the state pointed out that Anderson had been involved in 1990 in an investigation during which he met with Brown three or four times totalling approximately five hours. When questioned in the presence of the jury, Anderson testified that in his opinion, Brown had a "problem in telling the truth." A police officer who conducts an investigation makes an assessment of a witness's credibility and truthfulness. In this instance, the officer was testifying regarding Brown's truthfulness in the course of a police investigation—the identical circumstance in which he had previously evaluated her truthfulness. Thus, we conclude that Anderson's testimony regarding his personal opinion as to Brown's truthfulness was relevant and admissible.

With respect to Anderson's opinion as to Brown's reputation for truthfulness in the community, we must conclude that the admission of such a statement was error. Anderson gave no testimony regarding his knowledge of the community in which Brown lived or the circles in which she operated. He simply asserted that he knew of her reputation and that she was thought of as a

"pathological liar." There is no presumption that police officers, by virtue of their profession, know the reputation for truthfulness of all those within their jurisdiction. Without a more adequate foundation, the admission of this testimony was error and it should have been excluded.

■■■ As to detective Miller, Carsner argues that Miller's contact with Brown had occurred more than ten years prior and was therefore not relevant. Miller testified that in the early 1980's, he was a school resource officer at a junior high attended by Brown. Miller also testified, however, that his last contact with Brown was two or three years before, when Brown came to see him at the police station. In his opinion, "She has never been very truthful." As noted above, there is no requirement of long or recent acquaintance for personal opinions as to credibility. As stated in *Watson*, "cross-examination can be expected to expose defects." 669 F.2d at 1382, *citing* 3 WEINSTEIN'S EVIDENCE, ¶ 608[04], at 608–20 (1981). Thus, Miller's personal opinion as to Brown's credibility was properly admitted.

■■■ At trial, detective Miller also described Brown's reputation for truthfulness as "not good." Miller did not indicate whether this reputation was what he believed to currently exist or whether it was Brown's reputation from junior high school. The relevant inquiry, however, is the reputation of the witness at the time of trial or when the statements or testimony being questioned are made. *United States v. Lewis*, 482 F.2d 632 (D.C.Cir.1973). *See also* 1 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 43 (4th ed. 1992). If Miller was referring to Brown's reputation in junior high school, such an opinion is too remote to be of relevance. If Miller was referring to Brown's current reputation, he, like Anderson, failed to give any testimony about the community in question. It was therefore error for the district court to allow such testimony, over Carsner's objection, without further foundation as to the basis for Miller's knowledge of Brown's current reputation for truthfulness.

Although we have held that the admission of the detectives' testimony regarding Brown's reputation for truthfulness was er-

ror, we need not remand for a new trial if we deem the error harmless. Idaho Rule of Evidence 103 requires that "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." *See also* I.C.R. 52. The Idaho Supreme Court has further defined the harmless error doctrine by stating:

> The standard for determining whether error is harmless is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction, and that the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

*State v. Pizzuto*, 119 Idaho 742, 762, 810 P.2d 680, 700 (1991) (citations omitted).

■■■ In this case, the detectives' personal opinions as to Brown's credibility were properly admitted. In addition, Brown's testimony was contradicted by Hendry, who claimed he never entered the apartment following the shooting. The defense's other witness, Renee Victory, who testified she was present during the conversation in which Hendry allegedly admitted entering the apartment, also contradicted Brown. According to Victory, Hendry admitted being in the apartment before the shooting, but not after. We are convinced, beyond a reasonable doubt, that the result in this case would have been the same had the testimony regarding Brown's general reputation for truthfulness in the community not been admitted. Therefore, we deem any error to be harmless.

## C. PROSECUTOR'S CLOSING ARGUMENT

Carsner alleges that certain comments made by the prosecutor during closing argument were error. Specifically, Carsner objects to the following commentary by the prosecutor:

> What do you know about the defendant? I mean, you know that he admits to fighting with Lorraine in the past. He admitted that to Detective Smith and Detective Ayotte. He tried to show them a scratch that he got that he says came from Lorraine.... And the defendant admits that

his son has seen him fighting with other women. So you know that about the defendant.

You also know that defendant was—had this felony traffic problem in the state of Oregon, a driving without privileges charge. Certainly it's not the most serious charge that there is, but I would ask you to take that in consideration when you decide about the defendant's credibility and take it into consideration only for that purpose when you think about whether the defendant is telling you the truth when he says, I wasn't in the room when Lorraine killed herself.

 During these statements, Carsner's counsel did not object. Where no objection is made to comments in the prosecution's closing, we will review the propriety of the comments only if they amount to fundamental error. *State v. Smith,* 117 Idaho 891, 898, 792 P.2d 916, 923 (1990). Fundamental error is committed only if the comments were "so egregious or inflammatory that any prejudice arising therefrom could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded." *State v. Ames,* 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct.App.1985).

This Court has previously stated the broad latitude given prosecutors during closing argument:

> The role of the public prosecutor is to present the government's case earnestly and vigorously, using every legitimate means to bring about a conviction, but also to see that justice is done and that every criminal defendant is accorded a fair trial. Although we have recognized the imposition of certain well-accepted restrictions beyond which the prosecutor's argument may not go without running afoul of its function, the propriety of a given argument will depend largely on the facts of each case.... Thus, the prosecutor may discuss the evidence, pointing out discrepancies and conflicts in the testimony, and argue that the evidence in the record supports and justifies a conviction.

*State v. Reynolds,* 120 Idaho 445, 449–50, 816 P.2d 1002, 1006–07 (Ct.App.1991) (citations and footnotes omitted).

 It is important to distinguish between comments made by the prosecutor which would draw to the jury's attention otherwise unadmitted evidence and comments, as in this case, where the prosecutor uses admitted evidence to bolster his or her argument. With respect to the prosecutor's comments on the outstanding warrant for Carsner's arrest, this evidence was brought before the jury without objection by Carsner during the course of the trial. No limiting instruction was requested to restrict the purposes for which this evidence could be considered by the jury. Although this evidence may have been irrelevant to Carsner's credibility, the prosecutor's brief reference to the charge of driving without privileges is not so egregious or inflammatory that any error arising from it could not have been cured upon a timely objection.

 Similarly, the evidence that Carsner had fought with McKee and other women in the past was also brought before the jury without objection. Carsner readily admitted to fighting with McKee the night of the shooting. The prosecutor's comments in closing apparently were an attempt to provide a motive for why Carsner might have killed McKee. Commenting on evidence properly before the jury as to a possible motive for a crime does not amount to error. We conclude therefore that the comments made by the prosecutor during closing argument did not rise to the level of fundamental error.

### D. CUMULATIVE ERROR

 Finally, Carsner alleges that even if the individual errors do not by themselves warrant relief, taken as a whole, the errors amount to cumulative error. The cumulative error doctrine "refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, the errors show the absence of a fair trial," in contravention of the defendant's constitutional right to due process. *State v. Pizzuto,* 119 Idaho 742, 764, 810 P.2d 680, 702 (1991); *State v. Peite,* 122 Idaho 809, 839 P.2d 1223 (Ct.App.1992). Having carefully reviewed the record in this case and the errors alleged

therein, we conclude that the cumulative error doctrine does not warrant a reversal of Carsner's conviction and a new trial.

## CONCLUSION

In this case, the jury was properly instructed, according to Idaho law, regarding murder and manslaughter. The instructions also adequately covered the intent requirements of I.C. § 18–114. The instructions to the jury, when read as a whole, were not an invitation for the jury to improperly consider Carsner's refusal to testify at trial as evidence of guilt. The affirmative request by defense counsel that the jury's question regarding adequate provocation not be answered precludes our consideration of that issue on appeal. Although we determine that the testimony of detectives Anderson and Miller was improper insofar as it lacked foundation regarding Brown's general reputation for truthfulness in the community, any resulting error was harmless. The prosecutor's closing arguments were proper. The aggregate effect of all these alleged errors does not warrant relief under the cumulative error doctrine. Therefore, the judgment of conviction for second degree murder is affirmed.

WALTERS, C.J., concurs.

LANSING, Judge, concurring in the result.

I join in the foregoing opinion except the conclusion as to the admissibility of Detective Miller's testimony that in his opinion Patty Brown was an untruthful person. The foundation for this opinion consisted solely of testimony that in about 1980 to 1982, Ms. Brown had been a student at a junior high school where Detective Miller was the school resource officer, and that he later had a single contact with her when she went to the police station to see Detective Miller two or three years prior to the trial in this case. Neither the duration or subject matter of this later visit was described. It is apparent that Detective Miller's opinion as to Brown's veracity was based primarily or exclusively upon his contact with her as a school resource officer when Brown would have been a child of twelve to fifteen years of age. I cannot subscribe to the view that childhood fibs may be used to brand the adult a liar. In my view, knowledge of childhood prevarications is hardly a valid foundation upon which to predicate an opinion of the grown person's character and truthfulness. Ironically, the majority opinion, after finding Detective Miller's *opinion* testimony admissible, goes on to conclude that his testimony as to Brown's *reputation,* if based upon her reputation in junior high, is predicated on information too remote to be relevant. Surely a parity of reasoning leads to a conclusion that Detective Miller's opinion of Brown's veracity was likewise based upon information too remote in time and different in circumstance to be probative.

I nonetheless concur in the majority's conclusion that reversal of Carsner's conviction is unnecessary. Detective Anderson's properly admitted opinion testimony about Brown's lack of veracity, and other admissible evidence that impeached her testimony, render harmless any error in the admission of Detective Miller's opinion.