852 P.2d 87

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Charles TRIBE, Defendant–Appellant.**

**No. 16936.**

Supreme Court of Idaho,
Boise, May 1992 Term.

May 10, 1993.

Alan E. Trimming, Ada County Public Defender; Deborah A. Whipple, Deputy Public Defender, on the briefs; and Richard D. Toothman, Deputy Public Defender, argued, Boise, for defendant-appellant.

Hon. Larry EchoHawk, Atty. Gen., and Michael A. Henderson, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

1991 OPINION NO. 120, ISSUED AUGUST 22, 1991, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR

## ON REHEARING

BISTLINE, Justice.

Tribe was charged with the first degree torture murder of Diana Tribe, his wife. Before trial, the district court informed the panel of prospective jurors that Tribe's case was "not a death penalty case." At the conclusion of the trial, the court instructed the jury relative to first degree murder by torture and as to second degree murder but not as to second degree murder by torture. The jury convicted him on the first degree murder charge. The district court imposed a fixed life sentence.

Tribe had admitted, as recorded in a taped interview which took place shortly after his arrest, that he hit his wife in their home on the evening of September 30, 1986, specifying that he had struck blows solely with his fists. He did not remember how many times he struck her. After striking one of his blows, he stated, she fell to the floor, and her head banged against a heating vent. At that point, Tribe called the paramedics for assistance.

Her death at the hospital was attributed to severe brain injury which was medically determined to be caused by repeated blows to the head. The evidence adduced at trial disclosed that Tribe had also physically abused her before the incident which resulted in her death.

Tribe raises four issues in his challenge to the conviction and sentence: 1) that the jury should have been instructed as to the lesser included offense of second degree murder by torture; 2) that the district court erred in declaring to the venirepersons that this was not a case involving the death penalty; 3) that the evidence was not sufficient to support the jury verdict as a matter of law; and 4) that the determinate life sentence was excessive and hence beyond the outer bounds of the court's sentencing discretion.

## PART IA.

This is not the first time this Court has been asked to consider the existence of a second degree murder by torture offense and to require that the jury be instructed in that regard. Eight years ago in *State v. Stuart*, 110 Idaho 163, 715 P.2d 833 (1985), the Court summarily rejected Stuart's contention that the trial court, Judge Schwam, erred in not instructing the jury on second degree murder by torture. Defense counsel had at trial sought such instruction predicated on the trial court's statutory duty to instruct on lesser included offenses which are included in the greater offense. This Court, however, in declining to do so, rationalized as follows:

Appellant also argues that ... I.C. § 18–4001, and I.C. § 18–4003, should be

read to contemplate the existence of a second degree murder by torture offense, and thus the trial court should have instructed the jury on second degree murder pursuant to its duty to instruct on lesser included offenses. We note that a second degree murder instruction was given, but a second degree murder by torture instruction was not requested or given. In addition, we note that appellant's counsel accepted the instructions as given by the court, and noted that he had no objection to the instructions the court intended to give. Thus, any error in failing to instruct on this charge, if indeed one exists, was invited error and will not be considered on appeal. *State v. Lopez*, 100 Idaho 99, 593 P.2d 1003 (1979).

*Stuart*, 110 Idaho at 169–70, 715 P.2d at 839–40 (footnote omitted). The fault in the foregoing analysis and holding was readily detailed in the *Stuart* dissenting opinion, wherein was simply stated:

Prior to 1977, the law was clear in Idaho that the burden was upon the defendant to request the court to instruct on lesser included offenses. *State v. Morris*, 97 Idaho 420, 546 P.2d 375 (1976); *State v. Herr*, 97 Idaho 783, 554 P.2d 961 (1976); *State v. Boyenger*, 95 Idaho 396, 509 P.2d 1317 (1973). This Court recognized that in a situation where the state has requested that the defendant be convicted of a lesser included offense, the defendant, as a trial tactic, may not desire any instruction regarding a lesser included offense. *See State v. Herr, supra; State v. Boyenger, supra.* The case law was clear that no error could be predicated upon the failure of the trial court to give an instruction on a lesser included offense where defendant did not request such or as in the instant case withdraws such request.

However, in 1977 the Idaho legislature enacted I.C. § 19–2132(b) which states: 'The court *shall* instruct the jury on lesser included offenses when they are supported by any reasonable view of the evidence.' This Court on several occasions has construed the word 'shall' as being mandatory and not discretionary.

*Hollingsworth v. Koelsch*, 76 Idaho 203, 280 P.2d 415 (1955); *Munroe v. Sullivan Mining Co.*, 69 Idaho 348, 207 P.2d 547 (1949); *State v. Braun*, 62 Idaho 258, 110 P.2d 835 (1941). It is clear that I.C. § 19–2132(b) makes it *the duty of the trial court* to instruct the jury on lesser included offenses when they are supported by a reasonable view of the evidence, even if the court is not requested to do so. *To the extent that prior Idaho cases held that no error could be predicated upon the failure of the trial court to instruct the jury on lesser included offenses unless defendant requested such instructions, they are no longer applicable.*

. . . .

In future cases the *trial bench* should be cognizant that under the mandatory terms of I.C. § 19–2132(b) the duty to instruct as to lesser included offenses exists even when as a matter of trial tactics a defendant fails to request the instruction. However, any failure by the trial court to meet this mandatory duty which is caused by defendant's express objection to or waiver of the trial court instructing as to lesser included offenses will be as in the instant case invited error and not considered on appeal.

*Stuart*, 110 Idaho at 189, 715 P.2d at 859 (Bistline, J., dissenting).

The district court's remarks to counsel in the State's prosecution against Tribe are more enlightening relative to the above excerpt from *Stuart*, and are also provocative:

THE COURT [the Hon. Deborah Bail, District Judge]: I thought it was peculiar *in the Stuart case that they [the Supreme Court] rejected the suggestion that there should have been an instruction on second degree murder by torture* saying that since the defense didn't ask for it, it was invited error, which is peculiar, *because if, indeed, it were a lesser-included offense, it is error not to give the instruction, whether or not the defense requests it.*

MR. HAYNES [Trial counsel for the defendant]: That's right.

THE COURT: Which is puzzling—it is puzzling to me. It was also puzzling to me they used the term—they used the expression 'if one exists' in reference to that.

Tr., Vol. 5, 2–3 (emphasis added). Judge Bail's puzzlement was the product of an accurate reading of *Stuart;* unfortunately, the above holding in the *Stuart* majority opinion was the product of an inaccurate reading of *State v. Lopez,* 100 Idaho 99, 593 P.2d 1003 (1979). Back-tracking from *Stuart* to *Lopez,* it is readily seen that the course of justice went awry when the Court relied upon the holding of *Lopez* as supporting authority upon which it incorrectly premised the "invited error" assigned against counsel representing *Stuart.* Obviously, Judge Bail's expressed consternation was well-justified. Moreover, under the clear provisions of I.C. § 19–2132(b) [1], it *was* incumbent upon Judge Schwam to correctly instruct the *Stuart* jury on any and all lesser offenses which are included in the greater charge of first degree murder. *Lopez,* written just six years before *Stuart,* ruled that "[t]o the extent that prior Idaho cases held that no error could be predicated upon the failure of the trial court to instruct the jury on lesser included offenses unless defendant requested such instructions, they are no longer applicable." *Lopez,* 100 Idaho at 102, 593 P.2d at 1006.

Ever since Judge Bail mused with counsel on second degree torture murder, this Court has been pondering the question of whether murder by torture can constitute murder of the second degree. Today we address the question.

---

1. The version of Idaho Code § 19–2132 at that time provided:

    **Instructions on included offenses.**—(a) In charging the jury, the court must state to them all matters of law necessary for their information. Either party may present to the court any written charge and request that it be given. If the court thinks it correct and pertinent, it must be given; if not, it must be refused. Upon each charge presented and given or refused, the court must endorse and sign its decision. If part be given and part refused, the court must distinguish, showing by the endorsement what part of the charge was given and what part refused.

## PART IB.

The offense of torture murder in general is essentially a compilation of I.C. § 18–4001 and I.C. § 18–4003. Section 18–4001 defines the terms "murder" and "torture":

**18–4001. Murder defined.**—Murder is the unlawful killing of a human being with malice aforethought or the intentional application of [any form of] torture to a human being, which results in the death of a human being. [1] *Torture is the intentional infliction of extreme and prolonged pain with the intent to cause suffering.* [2] *It shall also be torture to inflict on a human being extreme and prolonged acts of brutality irrespective of proof of intent to cause suffering.*[2] The death of a human being caused by such torture is murder irrespective of proof of specific intent to kill; torture causing death shall be deemed the equivalent of intent to kill.

(Numbers in brackets, emphasis, and footnote added.)

Recognizing that the legislature in dealing with torture has coupled the infliction of torture with four specific differing intents, each of which if proven results in murder of the first degree and observing that we have taken the liberty of restructuring the four specific intents into I.C. § 18–4003, we hasten to explain our perception that the legislature likely understood that the word "intent" would be broadly used to apply to any infliction of torture [3] done with a specific intent to accomplish one of the four objectives mentioned in I.C. § 18–4003. Upon that premise we inter-

---

(b) The court *shall* instruct the jury on lesser included offenses when they are supported by any reasonable view of the evidence. (Emphasis added.)

2. Definition [1] of torture will be herein referred to as "pain torture," and definition [2] will be designated as "brutality torture." Hence, it follows that there may be homicides which may be pain torture murder or which may be brutality torture murder.

3. It should be noted that torture when inflicted by a person possessed of any one of the four designated intents is murder of the first degree.

pret the legislative language as providing that:

> (a) All murder which is perpetrated by means of poison, or lying in wait, or torture, when torture is inflicted
>
> [1.] with the intent to cause suffering,
>
> [2. with the intent] to execute vengeance,
>
> [3. with the intent] to extort something from the victim, or
>
> [4. with the intent] to satisfy some sadistic inclination, or which is perpetrated by any kind of wilful, deliberate and premeditated killing is murder of the first degree.

Subsections (b)–(f) of I.C. § 18–4003 specifically delineate five other differentiated murders (none of which are involved in this case) which rise to the level of murder in the first degree. Subsection (g) states only: "All other kinds of murder are of the second degree." It is clear that § 18–4003 *pain torture murder* is always in the category of first degree, inasmuch as I.C. § 18–4003 [degrees of murder] includes "torture, when torture is inflicted with the intent to cause suffering...."

In view of I.C. § 18–4003's use of the disjunctive "or" in defining first degree torture murder, the intent to cause suffering need not be established where the charge is that the defendant possessed the intent to execute vengeance, to extort, or to satisfy a sadistic inclination.[4] We then turn to the other definition of torture, *i.e.,* brutality torture, which addresses the situation in which torture consists of inflicting "extreme and prolonged acts of brutality" on the victim, but where defendant was not necessarily possessed of the intent to cause suffering. If it is established that the defendant did engage in brutality torture but not demonstrated that the defendant possessed any of the requisite intents—to cause suffering, to execute vengeance, to extort, or to satisfy a sadistic inclination— the appropriate penalty is second degree murder.

Accordingly, a jury instruction as to a charge of first degree torture murder should state that first degree murder by torture consists of death of the victim caused by the intentional infliction of extreme and prolonged pain with the intent to cause suffering, or the death of the victim caused by the infliction of extreme and prolonged acts of brutality with the intent to cause suffering, to execute vengeance, to extort something from the victim, or to satisfy a sadistic inclination.[5]

Idaho Code § 18–4001 also provides that, irrespective of proof of intent to cause suffering, the infliction of extreme and prolonged acts of brutality is torture, and torture causing death shall be deemed the equivalent of intent to kill. We therefore hold that the infliction of extreme and prolonged acts of brutality not accompanied by proof of intent to cause suffering, or by proof of executing vengeance, or by proof of extortion, or by proof of satisfying a sadistic inclination, is second degree torture murder under the legislature's statutory scheme. Furthermore, second degree

---

**4.** *State v. Stuart,* 110 Idaho 163, 715 P.2d 833 (1985), addresses itself primarily to pain murder. We disapprove any language contained therein suggesting that to prove any theory of first degree torture murder, the prosecution must demonstrate intent to cause suffering, since such an interpretation would render § 18–4003's mention of the other specific intents surplusage.

**5.** Given instructions should as a matter of course be tailored to fit the complaint. It is also important to note that Given Instruction No. 5 advised the jury that one of the elements of the offense of what we hold to be first-degree torture murder is that Charles Tribe tortured his wife "with the intent to cause suffering, to execute vengeance, to extort something from Diana Tribe, or to satisfy some sadistic inclination."

This element of the instruction clearly was overly broad because it presented four possibilities to the jury, *any one of which could be the one* upon which the jury reached its verdict. Where the charge of the amended information only accused Tribe of having tortured with an intent to cause suffering or to satisfy some sadistic inclination, that should have been the full extent of that element. This additional language further muddies the waters as to whether all twelve jurors agreed that Tribe acted with requisite intent, thereby raising a prima facie case of a fatal variance between the instructions and the charge of the prosecutor's amended information. Since Given Instruction No. 5 was given at the State's request, it would seem to bear some responsibility for the variance.

murder by torture, i.e., brutality torture murder, without a demonstration of intent as provided in I.C. § 18–4003(a), *is* a lesser included offense of first degree torture murder.

## PART II.

We next consider whether grounds for reversal resulted by reason of the trial court not instructing the jury on all lesser included offenses, more specifically, second degree torture murder. The State contends that there was no error because neither party requested such an instruction, but if there is a statutory obligation that the trial court instruct the jury on lesser included offenses whenever those offenses are supported by any reasonable view of the evidence it is unnecessary for any party to request such an instruction, although a party is never prohibited from doing so. The crucial question, then, is whether the trial court has such a duty.

Because the crime charged against Tribe occurred in 1986, we turn to the version of I.C. § 19–2132 *after* the 1977 amendment[6] but *before* the 1988 amendment[7]:

**19–2132. Instructions to jury—Requests—Instructions on included offenses.**—(a) In charging the jury, the court must state to them all matters of law necessary for their information. Either party may present to the court any written charge and request that it be given. If the court thinks it correct and pertinent, it must be given; if not, it must be refused. Upon each charge pre-

sented and given or refused, the court must endorse and sign its decision. If part be given and part refused, the court must distinguish, showing by the endorsement what part of the charge was given and what part refused.

(b) The court *shall* instruct the jury on lesser included offenses when they are supported by any reasonable view of the evidence.

I.C. § 19–2132 (emphasis added). In *State v. Lopez*, 100 Idaho 99, 593 P.2d 1003 (1979), this Court followed the provisions of the 1977 amendment.

■ This Court repeatedly has construed the word "shall" as being mandatory, not discretionary. *Lopez*, 100 Idaho at 102, 593 P.2d at 1006 (citing *Hollingsworth v. Koelsch*, 76 Idaho 203, 280 P.2d 415 (1955); *Munroe v. Sullivan Mining Co.*, 69 Idaho 348, 207 P.2d 547 (1949); *State v. Braun*, 62 Idaho 258, 110 P.2d 835 (1941)). It has been clearly established that the version of I.C. § 19–2132(b) relevant to this case makes it the duty of the trial court to instruct the jury on lesser included offenses when they are supported by any reasonable view of the evidence, even if the court is not requested to so instruct. *State v. Olsen*, 103 Idaho 278, 284, 647 P.2d 734, 740 (1982); *State v. Atwood*, 105 Idaho 315, 318, 669 P.2d 204, 207 (Ct.App.1983). It was, therefore, the district court's duty to instruct the jury as to second degree murder by torture. We so hold.

■ It is conceivable that a defendant could fall within the invited error rule, that

---

**6.** The legislature's 1977 amendment to I.C. § 19–2132 added subsection (b): "the court shall instruct the jury on lesser included offenses when they are supported by any reasonable view of the evidence." Act of March 28, 1977, ch. 154, 1977, Idaho Sess.Laws 390, 395; *see*, footnote 1, *supra*. Before 1977, the defendant had the burden of requesting the court to instruct on lesser included offenses. *State v. Morris*, 97 Idaho 420, 424, 546 P.2d 375, 379 (1976).

**7.** As amended in 1988, I.C. § 19–2132(b) provides in relevant part:
    (b) The court shall instruct the jury with respect to a lesser included offense if:
    (1) Either party requests such an instruction; and

    (2) There is a reasonable view of the evidence presented in the case that would support a finding that the defendant committed such lesser included offense but did not commit the greater offense....
Caveat: Bar and bench should be aware that the 1988 amendment to I.C. § 19–2132(b) appears to put the burden on counsel to affirmatively request jury instructions on lesser included offenses. Idaho Criminal Rule 30, on the other hand, does not appear to require counsel to offer jury instructions on lesser included offenses. *See State v. Koch*, 115 Idaho 176, 179, 765 P.2d 687, 690 (Ct.App.1988) (I.C.R. 30 does not require an objection at trial to preserve for appeal errors in the jury instructions).

is, the defendant could *expressly* waive a lesser included instruction which the trial court proposed giving. In *Lopez*, this Court advised: "Under the mandatory terms of I.C. § 2132(b), the duty to instruct as to lesser included offenses exists even when as a matter of trial tactics a defendant fails to request the instruction." We continued, "However, any failure by the trial court to meet this mandatory duty which is caused by *defendant's express objection to or waiver of the trial court instructing as to lesser included offenses* will be ... invited error and not considered on appeal." *Lopez*, 100 Idaho at 102, 593 P.2d at 1006 (emphasis added). Because the onus is upon the judge to instruct the jury on lesser included offenses, such waiver should be unambiguous. In Tribe's case, although Judge Bail did pause to ponder the probability of there being second degree torture murder, she concluded that "it would be an unreasonable reading of the statute to find second degree murder by torture, and that is why I have not instructed on that, because I do not think it exists under Idaho law, and I think the only reasonable interpretation is that one moves to second degree [murder]." Tribe's later withdrawal of his second degree torture murder instruction and request for an instruction on second degree murder with malice aforethought can hardly be construed to be error invited by Tribe. Neither does a motion to strike and clarify a complaint for the purpose of not confusing a jury amount to the express waiver present in *Lopez*.

■ Although an instruction on "ordinary" second degree murder was given (i.e., second degree murder with malice aforethought), that instruction did not satisfy the requirement that the jury be fully instructed as to *all* of the lesser crimes which are necessarily included in the greater charge, nor does it render the trial

court's error harmless. Because the "ordinary" instruction did not mention the word "torture," the jury on finding Tribe guilty of torture could have believed that the only appropriate offense involving torture, and the only instruction given which mentions torture, was first degree torture murder, even without finding any of the intents required to prove first degree torture murder. Moreover, because the legislature apparently has determined that there was an existing need to define torture,[8] an instruction as to "ordinary" second degree murder clearly is not interchangeable with an instruction as to second degree torture murder.

This Court does not determine issues of guilt or innocence, but rather conducts appellate review to determine whether criminal defendants have had the fair trial to which all defendants are entitled. *State v. Padilla*, 101 Idaho 713, 726, 620 P.2d 286, 299 (1980) (Bistline, J., dissenting, with Bakes, J., concurring). The issue squarely presented is whether Tribe was deprived of a fair trial by the failure to instruct the jury on the lesser included offense of second degree torture murder.

The Court, having the benefit of collegial discussion, a luxury which a district court does not have, concludes that the trial court committed reversible error by failing to consider the submission of a jury instruction relative to the lesser included offense of second degree torture murder, thereby also failing to determine whether such an instruction could be supported by a reasonable view of the evidence as adduced at trial.[9] Accordingly, the judgment of conviction must be reversed, the sentence imposed thereunder vacated, and the cause remanded for further proceedings consonant herewith. Upon remand, if the trial court determines at the close of the evidence that a reasonable view of the evidence exists supporting second degree tor-

---

8. For over three-quarters of a century, the legislature defined first degree murder to include murder by poison, by lying-in-wait, and by torture. No need was seen to define torture, any more than there was a need to define poison or ambushing, all of which are words of common knowledge and understanding.

9. Based on a review of the record, we cannot say that *no* reasonable view of the evidence adduced at trial supported a second degree torture murder instruction.

ture murder—that is, that a jury could find that Tribe inflicted "extreme and prolonged acts of brutality" but that he was not possessed of an intent mentioned in I.C. § 18–4003(a), the court should instruct the jury accordingly.

## PART III.

■ Because we reverse and remand for a new trial, it is appropriate to address Tribe's second issue, *i.e.*, whether the district court erred in advising the prospective jurors prior to *voir dire* examination [10] as follows:

> [I]t is charged by the State that the Defendant Charles Frank Tribe, on or about September 30th, 1986, in the County of Ada, State of Idaho, did willfully, unlawfully and intentionally torture Diane Tribe by inflicting pain with the intent to cause suffering, or it was done to satisfy some sadistic inclination upon Diane Tribe, a human being, by repeatedly striking her with his fists and hands and causing her to be injured, from which she died, all of which is contrary to the form, force and effect of the statute in such case and against the peace and dignity of the State of Idaho.
>
> To this the Defendant has entered his plea of not guilty. *This is not a death penalty case, and that will not be involved in this particular case.*
>
> . . . .
>
> Now, the jury has nothing to do with the penalty which may or may not be inflicted in this case, in the event that there is a conviction.
>
> Your job is simply to determine the facts.

Tr., Vol. 4, 1–8 (emphasis added).

Neither counsel for the defendant nor counsel for the prosecution lodged an objection to those remarks. On the morning of the first day of trial, the trial judge advised involved counsel of her intent to tell the panel of jurors that the State would not request the death penalty:

> [I]t is my intent to proceed with the jury selection as follows: I have asked for the first group of 25 to show up this afternoon. I'm going to advise them specifically of the nature of the charges and the information and the defendant's plea.
>
> *I will inform them that it is not a case in which the State is asking the death penalty, and I am also going to advise them at that time that they are not to be concerned about what the penalty to be imposed is.*
>
> They are just to worry about whether or not the State has proved its case and decide what the facts in the case are.

Tr., Vol. 5, 9 (emphasis added). Neither counsel objected to this statement. It is important to note that the court's statement to counsel earlier in the day differs dramatically from what the court in fact later told the jury panel. Whereas the court had first told counsel that the venirepersons would be advised that the State was not seeking the death penalty, the court actually advised the jury that "[t]his is not a death penalty case."

Counsel and the court are alike chargeable with knowing that the prosecution could not request the death penalty were the defendant to be convicted of a homicide less than first degree murder, making it unclear as to how this unusual advice to the jury came about. An entry in the court minutes states only this:

> Defense counsel's argument on not to "death qualify" jury. Court *grants* motion and will not allow. State and Defense file a stipulation with the Court.

R. 69. Court minutes for February 2, 1987 (emphasis in original). There is no trace of any stipulation in the record; neither the transcript nor the record on appeal provide any information relative to a stipulation. Obviously, with the minutes reflecting that a stipulation was filed with the court, the clerk who prepared the minutes must have seen something handed to the court which was believed to be a stipulation.

It is interesting that neither counsel objected to the court's remarks, although we can readily advance reasons for such apparent compliance. An objection by the State might result in the jury not convict-

---

**10.** We need not decide whether such error is reversible in light of our holding in Part I.

ing Tribe of first degree torture murder, since the potential imposition of the death penalty undoubtedly would affect deliberations of most jurors, making their deliberations more emotionally charged and perhaps overly cautious. Defense counsel's objection to the court's remarks might pave the way for the imposition of the death penalty.

It is inappropriate for the court to communicate in advance to the prospective jurors its decision on the penalty which may or may not be imposed, being the very same reason that counsel may not inform the jury about penalties during closing argument: impermissible influence of the jury's decision making.[11] For instance, on one hand, the judge's comment might have suggested to the jury that the district judge had prejudged the defendant and "found" him guilty of first degree torture murder, albeit not so heinous in the court's mind to merit the death penalty. So viewed, the court's gratuitous statement might cause the jury to relax in its fact finding duty, thus perhaps swinging the jurors away from an acquittal and toward a verdict of murder in the first degree. On the other hand, such a perceived prejudgment could push a jury away from a verdict of murder in the first degree; a jury could take the judge's "finding" that Tribe did not deserve the death penalty a step further and decide that Tribe deserved an acquittal or a conviction of a lesser included offense, even were the jury to believe that the prosecution had proved all the elements of first degree torture murder.

The only plausible reason guiding the court's decision to remove the specter of the death penalty would be to put the jurors at ease. Even were the court of the mind that a sentence imposing the death penalty might not be justified upon conviction, we are not aware of case precedent for so pre-advising the jury. Where, by grand jury indictment or by preliminary hearing on the charge of a complaint, an accused is bound over to stand trial by jury in district court, unless the charge is concluded by plea bargaining approved by the court, the defendant's guilt or innocence is placed in the hands of the jury, as is the degree of the offense, if found guilty.

## CONCLUSION

The defendant's conviction is reversed, and the determinate life sentence vacated. The cause is remanded to the district court for a new trial consistent herewith.

JOHNSON, J., concurs.

McDEVITT, C.J. concurs in Part IB and concurs in the result.

BAKES, Judge Pro Tem., concurring in part and dissenting in part:

I concur in Part IB of the Court's opinion regarding the analysis of I.C. §§ 18–4001 and 18–4003, relating to the charge of second degree murder by torture. Part IB should clarify the distinction between first and second degree murder by torture, and the elements necessary to constitute those two different offenses.

However, contrary to the majority, I would reject the appellant's claim on appeal that the trial court erred in failing to instruct on the theory of second degree torture murder. I believe the case of *State v. Eastman*, 122 Idaho 87, 831 P.2d 555 (1992), precludes appellant Tribe from asserting that the trial court committed error in not giving a second degree murder by torture instruction. As the *Eastman* case states, "It is incumbent upon the defendant to submit a requested instruction or in some other manner apprise the trial court of the specific instructions requested." 122 Idaho at 90, 831 P.2d at 558. The record shows that, while the defendant Tribe did originally ask for such a second degree murder by torture instruction, when the second degree torture murder language, *i.e.*, "prolonged acts of brutality," was stricken from the information at Tribe's request, he told the trial court that

---

11. What sentence may be imposed if the defendant is found guilty *can* and *does* influence the jury. Otherwise, there would be no need to

"death qualify" a jury. *See, e.g., Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

he was withdrawing any request for a second degree murder by torture instruction.

When the defendant moved to strike out the second degree murder by torture language—"inflicting extreme and prolonged acts of brutality"—the prosecutor stated that he amended the information "primarily in response to the defendant's motion to strike, and I think this amended information clears it up." As a result, the prosecutor advised the court and defense counsel that, "I did strike all of the business with second degree by torture." The defense counsel then acknowledged that, "The second degree murder by torture language is stricken, and I move to strike the words here the last line, 'Fists and hands.' That seems redundant to me, and surplusage."

> Thereafter, the defense counsel stated:
> MR. HAYNES [defense counsel]: I have some proposed instructions here, Your Honor, and I said they would accompany my motion, and here they are. I lodge them with the court at this time.
> THE COURT: All right.
> MR. HAYNES: I have withdrawn my proposed second degree murder instruction, because I'm not sure what I want to propose now, if the court will let us do that.

At the end of the trial, at the jury instruction conference, the defendant then submitted a standard second degree murder instruction, not a second degree murder by torture instruction. (See Defense Proposed Instruction 18, attached.) That is the only requested defense instruction on second degree murder in the record. The trial court did give a standard second degree murder instruction. Having withdrawn the earlier second degree murder by torture instruction, and then having requested a standard second degree murder instruction, I think the *Eastman* case holds that Tribe is now precluded from claiming error by the failure of the trial court to give a second degree murder by torture instruction. *State v. Stuart*, 110 Idaho 163, 169–170, 715 P.2d 833, 839–840 (1986); *State v. Lopez*, 100 Idaho 99, 593 P.2d 1003 (1979).

As to Part III of the Court's opinion, the record on appeal is unclear whether or not the understanding was merely that the state would not request the death penalty, or whether parties and the trial judge had agreed that the death penalty would not be imposed. In either event, I do not believe that it was error for the trial judge to advise the jury that the death penalty would not be involved in this case.

As the Court's opinion points out, the prosecution and the defendant can enter into a plea bargain agreement to plead guilty to first degree murder upon condition that the death penalty would not be imposed, and the trial court could approve such a plea bargain agreement and, upon entry of the guilty plea, would be bound not to impose the death penalty. I see no reason why the parties cannot agree in advance that, even though the question of guilt or innocence will be submitted to the jury, the parties could enter a similar agreement which, if approved by the trial court, would be equally valid and would not be erroneous. Nor do I believe that a trial court errs if, on its own initiative, it concludes prior to trial that it will not impose the death penalty and so advises the jury.

I would affirm the judgment of the district court in this case.

REINHARDT, J. Pro Tem., concurs.

INSTRUCTION NO. 18_____

    Murder of the second degree is the unlawful killing of a human being with malice aforethought when there is manifested an intention unlawfully to kill a human being but the evidence is insufficient to establish deliberation and premeditation.

*Submitted by Defense*
*2-6-87 at approx 9:00 a.m.*

*Not used. Covered*

*Applies to a case where*
*first degree murder is willful,*
*intentional and premeditated*
*not murder by torture*
*in the first degree.*
      *D.A. Bail*