888 P.2d 389

STATE of Idaho, Plaintiff–Respondent,

v.

Charles Frank TRIBE, Defendant–Appellant.

No. 21094.

Court of Appeals of Idaho.

Dec. 30, 1994.

Petition for Review Denied Feb. 8, 1995.

Alan E. Trimming, Ada County Public Defender, Richard D. Toothman, Deputy Public Defender, Boise, for appellant.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

In *State v. Tribe*, 123 Idaho 721, 852 P.2d 87 (1993), (*Tribe I*), the Idaho Supreme Court reversed the conviction of Charles Tribe for first degree murder and remanded the case for a new trial. On retrial before another jury, Tribe was again found guilty of first degree murder. He appeals from the judgment of conviction, raising two issues. First, Tribe contends that the district court erred by granting a motion by the State to further amend the amended information before the new trial commenced. Second, he asserts that the determinate life sentence imposed by the district court was an abuse of discretion. We hold that the district court did not err in either regard, and we affirm the judgment of conviction and sentence.

## AMENDMENT OF THE INFORMATION

 The authority of the trial court to permit amendment of an information is set forth in Idaho Criminal Rule 7(e). This rule provides that:

> The court may permit a complaint, an information or an indictment to be amended at any time before the prosecution rests if an additional or different offense is not charged and if substantial rights of the defendant are not prejudiced.[1]

Our Supreme Court has held that the decision to allow the State to amend an information is a matter within the discretion of the

---

1. Rule 7(e) reflects the requirements in I.C. § 19–1420, which provides:

 An indictment or information may be amended by the prosecuting attorney without leave of the court, at any time before the defendant pleads, and at any time thereafter, in the

discretion of the court, where it can be done without prejudice to the substantial rights of the defendant. An information or indictment cannot be amended so as to charge an offense other than that for which the defendant has been held to answer.

trial court. *State v. LaMere*, 103 Idaho 839, 655 P.2d 46 (1982). In exercising this discretion, the trial court must be sure that no substantial rights of the defendant are prejudiced. *Id.* at 842, 655 P.2d at 49. In the absence of a showing of prejudice arising from the amendment, the filing of an amended information does not constitute error. *Id., citing State v. Owens*, 101 Idaho 632, 619 P.2d 787 (1980). The defendant bears the burden of showing prejudice resulting from the amendment. *State v. Banks*, 113 Idaho 54, 57, 740 P.2d 1039, 1042 (Ct.App.1987).

The amended information upon which Tribe originally was tried and found guilty read as follows:

> [T]he defendant, CHARLES FRANK TRIBE, on or about September 30th, 1986, in the County of Ada, State of Idaho, did wilfully, unlawfully, and intentionally torture Diane Tribe by inflicting pain with the intent to cause suffering or it was done to satisfy some sadistic inclination, upon Diane Tribe, a human being, by repeatedly striking her with his fists and hands and causing her to be injured from which she died.

Upon appeal from the original conviction, the Supreme Court in *Tribe I* held that the trial court had erred in not instructing the jury on the lesser included offense of second degree torture murder. The Supreme Court explained that "pain torture murder" is always in the category of first degree inasmuch as I.C. § 18–4003 includes "torture, when torture is inflicted with the intent to cause suffering" but that the intent to cause suffering need not be established where the charge is that the defendant possessed the intent to execute vengeance, to extort something from the victim, or to satisfy a sadistic inclination. 123 Idaho at 725, 852 P.2d at 91. The Supreme Court also addressed "brutality torture," the circumstance in which torture consists of "extreme and prolonged acts of brutality" on the victim, but where the defendant was not necessarily possessed of the intent to cause suffering. *Id.* The Supreme Court said:

> If it is established that the defendant did engage in brutality torture but not demonstrated that the defendant possessed any

of the requisite intents—to cause suffering, to execute vengeance, to extort, or to satisfy a sadistic inclination—the appropriate penalty is second degree murder.

Accordingly, a jury instruction as to a charge of first degree torture murder should state that first degree murder by torture consists of [the] death of the victim caused by the intentional infliction of extreme and prolonged pain with the intent to cause suffering, or the death of the victim caused by the infliction of extreme and prolonged acts of brutality with the intent to cause suffering, to execute vengeance, to extort something from the victim, or to satisfy a sadistic inclination.

. . . . .

We therefore hold that the infliction of extreme and prolonged acts of brutality not accompanied by proof of intent to cause suffering, or by proof of executing vengeance, or by proof of extortion, or by proof of satisfying a sadistic inclination, is second degree torture murder under the legislature's statutory scheme. Furthermore, second degree murder by torture, i.e., brutality torture murder, without a demonstration of intent as provided in I.C. § 18–4003(a), *is* a lesser included offense of first degree torture murder.

123 Idaho at 725–26, 852 P.2d at 91–92 (emphasis in original).

After Tribe's conviction was set aside and the case was remanded to the district court for a new trial, the State moved to further amend the amended information. The district court granted the State's motion over the defendant's objection. The second amended information, upon which the new trial proceeded, charged that Charles Tribe,

> during the months of August and September 1986, in the County of Ada, State of Idaho, did wilfully, unlawfully, and intentionally torture Diane Tribe by inflicting extreme and prolonged pain with the intent to cause suffering or by inflicting extreme and prolonged acts of brutality, with the intent to cause suffering, upon Diane Tribe, a human being, by repeatedly striking her with his fists and hands and causing her to be injured from which she died

on or between September 30, and October 4, 1986.

When the State sought permission to amend the amended information, the prosecutor explained that he was removing the allegation that Tribe committed murder by torture while acting with the intent to satisfy some sadistic inclination. He also argued that the amendment would not change the trial court's ability to instruct on the second degree torture murder discussed in *Tribe I*, if there was a reasonable view of the evidence supporting such a charge.

Tribe contends as he did below in resisting the State's motion to amend the amended information, that this proposed amendment violated the "law of the case" established by the Supreme Court's opinion in *Tribe I*.[2] In his objection to the State's request to amend the information before the new trial, Tribe did not proffer any showing of resulting prejudice which could, or would, arise from the proposed amendment.[3] He argued only that the amendment was precluded by the law of the case formulated by the Supreme Court's decision in *Tribe I*. We deem this argument to be without merit. The State's proposed amendment was not inconsistent with the Supreme Court's determination of the differences between pain torture murder and brutality torture murder, when viewed in the context of allowing the jury at a new trial to find whether second degree torture murder

had been committed by Tribe. According to the Supreme Court, the issue of "brutality torture murder" clearly existed in the case, and the State's proposed amendment did not interject an "additional or different offense" in contravention of I.C.R. 7(e). We further note that Tribe raises no challenge to the instructions given by the district court at his retrial following the remand in *Tribe I*, and it appears that the court properly instructed the jury on the question of second degree murder as a lesser included offense consistent with the Supreme Court's decision in *Tribe I*.

Accordingly, we hold that the district court properly exercised its discretion in reaching the decision to permit the State to further amend the amended information.

## SENTENCE REVIEW

■ Tribe contends that the district court abused its discretion by sentencing him to the custody of the State Board of Correction for the remainder of his life, without possibility of parole. He argues that this sentence was unduly harsh and "smacks of vengeance more than punishment." He points to his good behavior and participation in correctional activities during the seven years transpiring since his arrest for the crime and argues that his sentence should have been indeterminate rather than for a fixed term of life.[4]

---

2. The doctrine of the law of the case has been described as follows:

 [W]here an appellate court states a principle of law in deciding a case, that rule becomes the law of the case and is controlling both in the lower court and on subsequent appeals as long as the facts are substantially the same. The decision on an issue of law made at one stage of a proceeding becomes precedent to be followed in successive stages of that same litigation.... Like stare decisis, the "law of the case" protects against relitigation of settled issues and assures that inferior courts will follow the decisions of superior courts.

 *Sun Valley Ranches, Inc. v. Prairie Power Cooperative, Inc.*, 124 Idaho 125, 129, 856 P.2d 1292, 1296 (Ct.App.1993), *quoting Frazier v. Neilsen*, 118 Idaho 104, 106, 794 P.2d 1160, 1162 (Ct. App.1990) (citations omitted). *See also, Insurance Associates Corp. v. Hansen*, 116 Idaho 948, 782 P.2d 1230 (1989).

3. With respect to the possibility of prejudice, the district court remarked, "If there is any potential prejudice that you can show because of this

permission of the second amended Information on the same statute, murder by torture in whatever form or guise it creeps up and in whatever degree, ... I would certainly consider a motion to continue the trial." Tribe did not request any continuance in response to the court's invitation, to prepare more adequately, which is further indicative of a lack of prejudice. *State v. Seiber*, 117 Idaho 637, 639, 791 P.2d 18, 20 (Ct.App. 1990).

4. As punishment for first degree murder, the accused may be sentenced to death or to a life term in the custody of the Board of Correction. I.C. § 18–4004; *State v. Wilson*, 107 Idaho 506, 690 P.2d 1338 (1984). Where, as here, capital punishment was not pursued by the State, the decision by the sentencing court as to whether the life sentence may be indeterminate with the possibility of parole after ten years, I.C. § 20–223 (1985), or shall be served entirely in confinement as a fixed or determinate sentence without the possibility of parole, is a matter within the court's discretion.

**614**

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent examination of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

Tribe was found guilty by the jury of the crime of torture murder in the first degree. The jury also made special findings that the crime was both pain torture murder and brutality torture murder with the intent to cause suffering. Tribe does not challenge the sufficiency of the evidence to support the verdict, which showed that the death of his wife, Diane Tribe, was the culmination of a pattern of physical abuse beginning at least as early as March, 1986, and continuing through her final, fatal beating on September 30, 1986. The evidence showed that she died of brain injuries, caused by multiple blows to her head; but over the preceding months she had suffered a brutal series of injuries at the hands of Tribe, including extensive bruising over her body, multiple rib fractures inflicted at different times, and perforations of her intestine which caused internal bleeding. A doctor described the internal injuries which were apparent at the time of her death as similar to those seen with high-speed motor vehicle accidents.

During the sentencing proceeding, the district court expressed its own view of the nature of the crime. The judge said:

As far as domestic battery violence goes, this is the most egregious case I have ever seen in terms of brutality, in terms of the violence that was inflicted, the physical intimidation, unrelenting and unmitigating. A hideous final assault on a hapless victim who could not find it in herself and in her heart to flee. And for better or worse we've been forced to relive this some seven years after the atrocity was ultimately committed. The escalation of violence and the viciousness of the attack culminating in the death of Diane was unrelenting.... Certainly there was no provocation. This long term brutalization had escalated from March through September and despite three therapeutic counseling sessions the ultimate tragedy was inflicted upon Diane on September 30th, cruel beyond belief, and we've had to relive it. A hideous assault after long term brutalization with the obvious intent to cause suffering beyond belief, unrelenting, unmitigating and of utmost depravity the likes of which this Court hasn't seen.

. . . . .

[I]n the weeks prior to death there was increasing viciousness. The facts show an increasing dangerous focus of violence and harm to others not confined to the circle of the immediate family and the final attack was one of extraordinary viciousness. The attack, the final assault and perhaps the merciful release of Diane was so severe at the end that the coroner said at trial in this case that he had not seen similar injuries except in the victims of an airplane or car crashes.... For want of a better expression, practically every bone in her body that could be broken was broken in terms of her thoracic cavity. The victim did not, could not and was incapable of resisting this murderous assault which was the culmination of a pattern of cruelty the likes of which this Court, I'm speaking for myself, has never seen before that escalated over the months and resulted in the death of Diane....

Tribe argues that during the period he was incarcerated since his arrest for the murder in 1986 until his sentencing on January 20, 1994, following the retrial, he had been a model prisoner, which demonstrates the possibility of his rehabilitation. However, the opportunity for rehabilitation as a means of achieving protection for society from a defendant's conduct is not the controlling factor. *State v. Moore*, 78 Idaho 359, 304 P.2d 1101 (1957).

> The primary consideration is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end. Important as are the humanitarian considerations affecting the accused, his family and other relatives, and the importance to society of rehabilitation itself, such considerations cannot be allowed to control or defeat punishment, where other factors are ignored or subordinated to the detriment of society.

*Id.* at 363, 304 P.2d at 1103.

This Court previously has expressed a view with respect to the imposition of a determinate period of incarceration during which the prisoner may not be paroled. In *State v. Eubank*, 114 Idaho 635, 759 P.2d 926 (Ct.App.1988), we said:

> [A] fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society.

*Id.* at 638, 759 P.2d at 929. *See also, State v. Pederson*, 124 Idaho 179, 857 P.2d 658 (Ct. App.1993). Here, as noted, the district court expressed its view of the egregiousness of the crime. The court also considered the rehabilitation potential suggested by Tribe's conduct as a model prisoner. The court was unpersuaded on this latter point, noting that "the modeling has been done in a controlled and artificial environment." The court also noted that under the sentencing laws as they existed when the crime was committed, Tribe would be eligible for parole on an indeterminate life sentence after serving ten years

from the date of his incarceration which commenced in 1986. The court viewed this period of potential confinement as insufficient in light of the "enormity and gravity and egregiousness of this offense." The court concluded that a fixed life sentence was more appropriate under the circumstances.

█ It is clear in this case that the court properly considered the nature of the offense, the character of the offender, and the sentencing objectives in pronouncing sentence. As our Supreme Court has noted, the seriousness of a homicide offense mandates a punishment in the form of a substantial prison sentence. *State v. Hooper*, 119 Idaho 606, 609, 809 P.2d 467, 470 (1991). A substantial sentence in this regard reflects society's condemnation of the defendant's conduct, deters other members of society from engaging in similar conduct, and protects society from future crime. *Id.* The gravity of the offense in this case, as shown by the circumstances, is sufficiently egregious to justify an exceptionally severe measure of retribution and deterrence. We hold that the sentence imposed was reasonable and that the district court did not abuse its discretion.

## CONCLUSION

We uphold the exercise by the district court of its discretion in permitting the State to further amend the amended information before trial. We also conclude that the district court did not abuse its sentencing discretion by imposing a determinate life sentence for first degree murder under the circumstances.

The judgment of conviction and the life sentence to the custody of the Board of Correction, without the possibility of parole, are affirmed.

LANSING and PERRY, JJ., concur.